**Phyllis J. LEWELLYN, et al.**

v.

**John A. BELL, et al.**

Supreme Judicial Court of Maine.

Argued Nov. 2, 1993.

Decided Dec. 22, 1993.

Neil D. Jamieson (orally), Potter & Prescott, Saco, for plaintiffs.

Christopher C. Taintor (orally), Theodore Kirchner, Norman, Hanson & DeTroy, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

COLLINS, Justice.

Phyllis J. Lewellyn, individually and as the Personal Representative of the Estate of Gary J. Lewellyn, (the "Client") appeals from the Superior Court's (York County, *Cole, J.*) denial of her motion to amend or alter its order compelling discovery. The Client filed a complaint against John A. Bell, an attorney, and the law firm with which Bell is associated (collectively, the "Attorney"), alleging professional negligence regarding the Attorney's representation of the Client in her previous lawsuit against the United States of America. The trial court granted the Attorney's motion to compel the Client's production of all documents relating to communications between herself and any other attorney prior to the settlement of the previous lawsuit. The Client argues that the trial court erred in failing to limit the scope of the order and refusing to review the documents *in camera*. Because we find that this interlocutory appeal from a discovery order does not come within the collateral order or death knell exceptions to the final judgment rule, we dismiss this appeal.

The Attorney represented the Client in a Federal Tort Claims Act action against the Veterans Administration. The Client settled this previous lawsuit. In the present action, the Client claims that the Attorney negligently represented her in the previous action. As a result of this alleged negligence, the Client argues that her right to a verdict, settlement or judgment for damages in the previous action was diminished.

The Client, while being deposed in the instant case, testified to the following: 1) that she was not sure whether she contacted her current attorney after the settlement or just prior to it; 2) that she did not tell the Attorney that she desired a trial instead of a settlement because she had been advised to "let it happen;" and 3) that she accepted the settlement because she thought the Attorney had "screwed up" the case and she wanted to "get it over with." However, the Client refused to answer further questions regarding what, if any, advice she received from other attorneys prior to the settlement of the previous lawsuit. She asserted that such information was privileged. The Attorney filed a motion to compel the production of all documents relating to communications between the Client and any other attorney made prior to the settlement of the previous suit. This motion was granted by the trial court. In response to the court's order, the Client filed a motion to amend or alter the order. This motion was denied. The Client filed a timely appeal.

■ "It is well settled that appeals, in order to be cognizable, must be from a final judgment." *State v. Lemay,* 611 A.2d 67, 68 (Me.1992); *e.g., Williams v. Bromley,* 622 A.2d 1171, 1172 (Me.1993); *Department of Human Services v. Lowatchie,* 569 A.2d 197, 199 (Me.1990). "A judgment is final if it 'fully decides and disposes of the whole cause leaving no further questions for the future consideration and judgment of the [trial court].'" *Williams,* 622 A.2d at 1172 (citations omitted).

The reasons for the final judgment rule are many and strong. It helps curtail interruption, delay, duplication and harassment; it minimizes interference with the trial process; it serves the goal of judicial

economy; and it saves the appellate court from deciding issues which may ultimately be mooted, thus not only leaving a crisper, more comprehensible record for review in the end but also in many cases avoiding an appeal altogether.

*State v. Maine State Employees Ass'n,* 482 A.2d 461, 464 (Me.1984); *Lowatchie,* 569 A.2d at 199; *see Williams,* 622 A.2d at 1172. In this case, the order appealed from is not final but rather interlocutory in nature.

"While the ... final judgment rule serves as a bar to immediate appeal from interlocutory orders, a few narrow and well-defined exceptions to this rule have been recognized." *State v. Lemay,* 611 A.2d at 68 (citations omitted); *e.g., Lowatchie,* 569 A.2d at 199. Additional exceptions may be created if extraordinary circumstances warrant. *Id.*

■ Generally, "discovery orders are interlocutory and not appealable: the aggrieved party must seek relief in appeal from the final judgment." *Hanley v. Evans,* 443 A.2d 65, 66 (Me.1982); *e.g., Amato v. Frank Amato, Inc.,* 501 A.2d 1296, 1299–1300 (Me. 1985); Field, McKusick & Wroth, *Maine Civil Practice* § 26.18b at 211–13 (Supp. 1981). Discovery orders, however, may be appealable pursuant to M.R.Civ.P. 72(c) (on report),[1] or under either the collateral order or the death knell exceptions to the final judgment rule. *See Pierce v. Grove Mfg. Co., Inc.,* 576 A.2d 196, 198–200 (Me.1990); *Hanley,* 443 A.2d at 66; *Maine Civil Practice* § 26.18b at 213.

### Collateral Order Exception

An interlocutory decision is appealable under the collateral order exception: "[I]f it falls within 'that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" "The collateral order exception to the final judgment rule allows an immediate appeal from an interlocutory order ...

where (1) that order involves a claim separable from [and] collateral to the gravamen of the lawsuit; (2) it presents a major and unsettled question of law; and (3) there would be irreparable loss of the rights claimed in the absence of immediate review."

*Pierce,* 576 A.2d at 199–200 (citations omitted).

■ Regarding the third element—irreparable loss of the rights claimed—the Client claims that she will suffer irreparable loss of her attorney-client privilege, will be forced to obtain new counsel, and will suffer emotional trauma. Because it is uncertain what information, if any, will be required to be disclosed by the Client, the asserted harms are merely speculative. In *Pierce,* 576 A.2d at 199–200, we denied the applicability of the collateral order exception to speculative claims of harms. Thus, the collateral order exception does not apply.

### Death Knell Exception

■ The death knell exception "permits an interlocutory appeal where the issue pressed on appeal would be effectively mooted and substantial rights of a party would be irreparably lost if review were to be delayed until final judgment. Put differently, 'where an interlocutory order has the practical effect of permanently foreclosing relief on a claim, that order is appealable.'" *Pierce,* 576 A.2d at 198 (citations omitted); *e.g., Cumberland Farms, Inc. v. Everett,* 600 A.2d 398, 399 (Me.1991).

In *Pierce,* 576 A.2d 196, we considered the death knell exception in the context of a motion to compel. We dealt with the review of an order compelling the production of all documents regarding the dealings of the defendant and a corporation. The defendant and the corporation had previously been involved in an antitrust suit in another state and the other state court had issued a protective order prohibiting the dissemination of documents pertaining to the case. The defendant argued, in part, that the death knell

---

1. Because this case does not implicate M.R.Civ.P. 72(c), this exception will not be discussed.

**948**

exception permitted an appeal of the motion to compel because the defendant would "lose forever the protection to which it [was] entitled under the attorney-client and work-product privileges." *Id.* at 198. We held that the death knell exception did not allow the defendant to appeal the motion to compel.

The Client argues that *Pierce* holds that orders which destroy privileged information are appropriate for interlocutory appeals. The Attorney, on the other hand, argues that *Pierce* holds that orders affecting the attorney-client privilege, and any discovery order for that matter, are not appropriate for an interlocutory appeal.

The assertions of both parties concerning *Pierce* are overstated. In that case we found that the death knell exception is appropriate when the harms are imminent, concrete, and irreparable. We also found the claimed harms to be speculative since the harm of a potential contempt action and civil suit were not concrete or imminent and since the defendant failed to show which materials would have been protected under the attorney-client privilege and why they should be protected. Thus, we held that the defendant did not qualify for the death knell exception because it failed to show that the order would result in imminent and irreparable loss of substantial rights. Here the claimed harms to the client are speculative and she has not shown that the order will result in imminent and irreparable loss of substantial rights.

In general, we agree with the Supreme Court of Connecticut that stated, in a situation analogous to the present case:

> The opportunities for delay that would become available if every disclosure order that might arguably implicate the attorney-client privilege could be appealed before trial are overwhelming to contemplate. The appeal filed in this case from a single disclosure ruling has taken more than eighteen months to resolve, while trial court proceedings have been stalled.

We conclude that the occasional violation of the attorney-client privilege that cannot be fully rectified upon review of the final judgment is a lesser evil than that posed by the delay in the progress of cases in the trial court likely to result from interlocutory appeals of disclosure orders.

*Melia v. Hartford Fire Ins. Co.*, 520 A.2d 605, 608 (Conn.1987). Thus, the discovery order at issue in this case is an interlocutory order that does not qualify for any exception to the final judgment rule.[2]

The entry is:

Appeal dismissed.

All concurring.

**2.** In his brief, the Attorney argues that any communications by the Client with other attorneys are not within the scope of the attorney-client privilege, that the Client has voluntarily waived any privilege by voluntary disclosure, M.R.Evid. 510, and that the clients allegation of reliance on the advice of the Attorney effected an implied waiver of any privilege. Because we dismiss this interlocutory appeal, we do not address these arguments. Nor do we address the Client's claims that the trial court erred in failing to limit the scope of its order and in refusing to grant an *in camera* review.