2005 ME 44

**Barbara A. LEWIS et al.**

v.

**TOWN OF ROCKPORT et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 13, 2005.
Decided: April 1, 2005.

Catherine Connors (orally), Joanna Brown, Pierce Atwood, Portland, for plaintiffs.

William Plouffe, Drummond, Woodsum & MacMahon; Christopher Vaniotis (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Barbara A. Lewis and her husband appeal from the judgment entered in the Superior Court (Knox County, *Atwood, J.*) affirming three decisions of the Rockport Zoning Board of Appeals, which granted a variance and affirmed the grant of building and flood hazard permits to Marsha Steinglass and her husband, allowing them to make substantial improvements to their residence. The court affirmed the ZBA decisions on the basis that the Lewises lacked standing. In spite of its decision on standing, the court reviewed the merits of the appeals and concluded that the ZBA's decisions granting the variance and permits were erroneous. We conclude that the Lewises have standing and that the ZBA erred in granting the variance and permits. We vacate the decision of the Superior Court on standing and remand for the entry of an order vacating the ZBA decisions.

## I. BACKGROUND AND PROCEDURE

[¶ 2] The Steinglasses have lived on their property on the shore in Rockport since 1973. The property has two distinct elevations: one is at sea level and the other is more than ten feet above. In 1975, the Steinglasses moved into the boathouse at the shore from the house located on the higher elevation. They had obtained approval from the ZBA to make improvements to the boathouse. A few years later they subdivided the property and sold the house they had formerly lived in to the Lewises, but the Steinglasses also retained a portion of the land on the higher elevation. In 1984, the Steinglasses obtained approval to increase the size of the boathouse, and two years later, after obtaining permits, they built a three-bay garage on the upper elevation. In 1999, they sought a permit to remove the garage and replace it with a house. The ZBA granted approval, but the Lewises appealed, and the Steinglasses abandoned the plan. Later, the Steinglasses replaced the garage with a newer one after obtaining permits over the Lewises' objection.

[¶ 3] In late 2002, Marsha Steinglass obtained a special exception from the ZBA to the Rockport Land Use Ordinance (LUO) to lift the boathouse, install a new foundation, and place a larger structure on the foundation. The Lewises had attempted to oppose the special exception application but their request to the ZBA to continue the hearing to another day so that they could be present was denied.

[¶ 4] Several months later, the Steinglasses applied to the ZBA for a variance from Rockport's Floodplain Management Ordinance (FMO), and the Lewises appeared before the ZBA in opposition. The FMO prohibits substantial improvements to a structure unless the elevation of the structure is one foot above the base flood level.[1] Rockport, Me., Floodplain Management Ordinance art. VI(K) (May 1, 1994). The parties agree that the project to lift and reconstruct the boathouse falls within the definition of "substantial improvement"

---

1. The base flood level is "commonly called the 100-year flood." Rockport, Me., Flood- plain Management Ordinance art. XIII (May 1, 1994).

in the FMO because the cost of the planned improvements would exceed fifty percent of the market value of the structure before reconstruction.[2] As applied to the boathouse, the elevation requirement means that the lowest floor of the structure would have to be elevated to twenty-one feet above sea level instead of the proposed elevation of fifteen feet. Thus, the Steinglasses sought a variance from the elevation requirement of the FMO that would allow them to have the structure at a fifteen-foot elevation.

[¶ 5] The ZBA held a hearing and made detailed findings of fact. It found that the existing boathouse had aged and deteriorated, and that it had rotting sills, windows, doors, floors, and cabinets in need of replacement. The boathouse had no foundation or central heating. The ZBA noted that both the existing structure and the proposed house are entirely within the seventy-five-foot shoreland setback from the high water line and within the one hundred-year flood plain. It concluded that failure to grant the variance from the FMO would result in undue hardship: "The land in question cannot yield a reasonable return unless a variance is granted ... because, without a variance, the house cannot be moved and will deteriorate to a state of disrepair given the limitation on rehabilitation expenses in the Floodplain Management Ordinance." The ZBA further found that the need for a variance was caused by the unique circumstances of the property "because the steep hill and sewer easement prevent [the owners] from moving the house further back and it is not practical to require that the building be moved to the top of the hill." The ZBA found that the variance would improve the residential character of the neighborhood and the need for it was not the result of action by the owner. By a vote of four to two, the ZBA granted a variance from the FMO elevation requirement, allowing the Steinglasses to place their building at a fifteen-foot elevation and permitting them to reconstruct the structure by more than fifty percent of the current value. The Lewises filed a timely appeal to the Superior Court pursuant to M.R. Civ. P. 80B.

[¶ 6] In the meantime, the Steinglasses obtained building and flood hazard permits from the Rockport Code Enforcement Officer (CEO). The Lewises appealed the granting of the permits to the ZBA, claiming that the permits were based on expanded plans not approved by the ZBA and that the CEO did not have the authority to issue them. Following the hearing, the ZBA made extensive findings and affirmed the issuance of the permits. With regard to the building permit, the ZBA concluded that the section of the LUO pertaining to elevation above the flood plain applied to new structures, not the movement and renovation of an existing structure and was, therefore, not applicable to the Steinglasses' plans. *See* Rockport, Me., Land Use Ordinance § 1415.3 (June 11, 2002). With regard to the flood hazard permit, the ZBA affirmed the issuance by the CEO because it had been based on the variance to the FMO elevation requirement previously granted by the ZBA. The Lewises also appealed these decisions.

[¶ 7] The Superior Court consolidated the appeals. In its decision and order, the court ruled that the Lewises lacked standing to pursue the appeals because they failed to show a particularized injury to them if the variances and permits were granted. For that reason, the court af-

---

2. The record shows that the CEO had advised the Steinglasses that because the market value of the boathouse was $219,672, they could spend up to $109,836 without coming under the requirements of the FMO.

firmed the decisions of the ZBA. However, stating that it was "prudent" to reach the merits, in the event that the Law Court disagreed with the standing decision, the court decided the merits, determining that the ZBA should not have granted the variance. The court concluded that the ZBA's finding that the property could not yield a reasonable return without the variance was not supported by the record. It also held that the ZBA erred as a matter of law in its interpretation of the LUO when it affirmed the issuance of a building permit and that the ZBA erred with respect to the flood hazard permit because such permit could not be granted without a lawful variance from the FMO.

## II. DISCUSSION

### A. Standing

[¶ 8] To have standing to appeal a zoning board decision, the appellant must have been a party to the administrative proceeding and must suffer a particularized injury from the board's decision. *Pride's Corner Concerned Citizens Ass'n v. Westbrook Bd. of Zoning Appeals*, 398 A.2d 415, 417–18 (Me.1979). An abutting landowner has a particularized injury if there is a conceivable injury. *Id.* at 418.

[¶ 9] The Lewises were parties to the proceedings at issue in this appeal. The subject of standing was not raised at those hearings, but the ZBA recognized in its findings that the Lewises had opposed for many years the increased development of the Steinglass property.[3]

[¶ 10] The Rockport ZBA decisions will allow a larger residence next door and allow it to be moved closer to the Lewises' property. This alone is sufficient to satis-

fy the particularized injury requirement. The Lewises have standing.

### B. Variance

[¶ 11] On the merits of this appeal,[4] we review the Board's findings "for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *Yusem v. Town of Raymond*, 2001 ME 61, ¶ 7, 769 A.2d 865, 869 (quotation marks omitted). We review the interpretation of local zoning ordinances *de novo. Isis Dev., LLC v. Town of Wells*, 2003 ME 149, ¶ 3 n. 4, 836 A.2d 1285, 1287. We look first to "the plain meaning of the language [of the ordinance] to give effect to the legislative intent." *Griffin v. Town of Dedham*, 2002 ME 105, ¶ 7, 799 A.2d 1239, 1242 (quotation marks omitted).

[¶ 12] The structure proposed by the Steinglasses was prohibited by the FMO because it did not meet the elevation requirements. Without a variance from the FMO requirement, the Steinglasses would not be permitted to make the substantial improvements to the boathouse.

[¶ 13] To obtain a variance, the Steinglasses had to demonstrate undue hardship by proving:

a. that the land in question cannot yield a reasonable return unless a variance is granted; and,

b. that the need for a variance is due to the unique circumstances of the property and not to the general conditions in the neighborhood; and,

c. that the granting of a variance will not alter the essential character of the locality; and,

---

3. The Town of Rockport takes no position on the standing issue.

4. We proceed to the merits in the interest of judicial economy and because the parties have thoroughly briefed all issues.

d. that the hardship is not the result of action taken by the applicant or a prior owner.

Rockport, Me., Floodplain Management Ordinance art. IX(B)(4) (May 1, 1994). The FMO requirements for determining undue hardship are identical to the statutory requirements. 30–A M.R.S.A. § 4353(4) (Supp.2004.)

[¶ 14] With regard to the reasonable return requirement, the ZBA concluded that the Steinglasses' land "cannot yield a reasonable return unless a variance is granted . . . because, without a variance, the house cannot be moved and will deteriorate to a state of disrepair given the limitation on rehabilitation expenses in the Floodplain Management Ordinance." We have interpreted the reasonable return requirement to mean "practical loss of all beneficial use of the land." *Rowe v. City of S. Portland,* 1999 ME 81, ¶ 6, 730 A.2d 673, 675 (quotation marks omitted). Contrary to the conclusions of the ZBA, the Steinglasses did not demonstrate that they would suffer the practical loss of all beneficial use of the land. They did not establish that they could not repair the boathouse without expending less than fifty percent of the value of it on the repairs. If the repairs cost less than fifty percent they would not need a variance. Furthermore, the market value of the house alone was close to $220,000, and a reasonable inference is that they could sell to another owner, thereby not losing all beneficial use of their land.

[¶ 15] The Steinglasses argue that the interpretation of the reasonable return requirement from *Rowe* and other cases is not applicable to the reasonable return requirement of the FMO because 30–A M.R.S.A. § 4353(4) and cases interpreting it are limited to variances from zoning ordinances, and the FMO is not a zoning ordinance. However, the Town's adoption of the identical language from section 4353(4) into the FMO demonstrates that it intended to import the interpretation that has been given to the statutory language.

[¶ 16] The ZBA erred in concluding that the Steinglasses' land would not yield a reasonable return without the variance. We do not reach the question of whether the ZBA ruled correctly on the other three undue hardship requirements, because failing to prove just one of the four requirements defeats the variance request.[5]

C. Building Permit

■ [¶ 17] The ZBA affirmed the building permit granted by the CEO. It concluded that the elevation requirement of the LUO is not applicable to the Steinglasses' plan for the boathouse. The ZBA held that the requirement of the LUO pertained only to new structures, and not to the Steinglasses' plan to lift and renovate the boathouse.

[¶ 18] The disputed section of the LUO, section 1415.3, reads, in part:

1. All new principal and accessory structures, and sidewalks and patios, shall be set back a minimum of one hundred (100) feet from the normal high-water line . . . .

2. Principal or accessory structures and expansions of existing structures shall not exceed thirty-four (34) feet in height . . . .

3. The first floor elevation or openings of *all* buildings and structures, including basements . . . shall be elevated at least one foot above the elevation of the 100–year flood . . . .

---

5. Our conclusion regarding the variance also disposes of the flood hazard permit appeal. The flood hazard permit could not be issued without the variance, and because the variance should not have been granted, the flood hazard permit is not valid.

Rockport, Me., Land Use Ordinance § 1415.3 (June 11, 2002) (emphasis added).

[¶ 19] If section 1415.3(3) applies to the boathouse, it will have to be elevated to twenty-one feet above sea level, instead of the planned fifteen feet. Although subsection (1) above applies to "new" structures, subsection (3) applies to "all" structures. The plain meaning of the subsection is clear. The requirement of one-foot above the one hundred-year flood elevation applies to all structures. The ZBA erred in concluding otherwise.

The entry is:

Judgment vacated. Case remanded to the Superior Court to enter judgment vacating the decisions of the Rockport Zoning Board of Appeals.