STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-05-052

PAUL ROGERS,

Plaintiff

v.

TOWN OF OLD ORCHARD BEACH
And SEACOAST RV RESORT, LLC,

Defendants

**ORDER**

DONALD L. GARBRECHT
LAW LIBRARY

AUG 02 2007

This matter comes before the Court on Paul Rogers's 80B appeal of administrative action taken by the Town of Old Orchard Beach.

**BACKGROUND**

Plaintiff Paul Rogers ("Rogers") lives off of Ross Road in Old Orchard Beach, Maine, on land abutting the property of Defendant Seacoast RV Resort, LLC ("Seacoast"). In 2004, Defendant Town of Old Orchard Beach ("OOB") granted Seacoast a conditional use permit to develop its 26.5-acre property into a seasonal campground with 88 sites, a pool, and recreational buildings. Conditions of that approval included that the property would have 100-foot natural buffers to the adjacent properties as required by OOB's zoning ordinance, and that Seacoast would add buffering on the side of its property abutting Rogers. Rogers sought review of the planning board's decision to grant the permit in March 2004 via an 80B action.[1]

Before resolution of the case, Seacoast and Rogers entered into a settlement agreement dated October 21, 2004. As a result, Rogers dismissed his 80B complaint

---

[1] The prior case was York County Superior Court Docket No. AP-04-023.

with prejudice. OOB's Town Planner decided in June 2005 that Seacoast would not be required to provide the buffering described in the conditional use permit. Rogers appealed that decision to the OOB Planning Board ("the Board") later that month. On July 21, 2005, Seacoast applied to the Town for an amendment to its conditional use permit, seeking to install fencing near the Rogers – Seacoast boundary. Seacoast proposed the addition of seven six foot tall evergreen trees and an eight foot tall wooden, stockade style fence. Following a hearing on August 11, 2005, the Board approved the amendments to the permit, including the evergreens and the site plan with fencing, finding that the plan complied with the zoning ordinance.

In September 2005, Rogers filed an 80B appeal in this court and also complained for breach of contract, arguing that Seacoast violated the terms of the settlement agreement, which included abiding by the original conditional use permit. Seacoast raised the affirmative defenses of failure to state a claim, accord and satisfaction, the Statute of Frauds, and that the suit is barred by terms of the settlement agreement. Action on the breach of contract claim has been stayed until final judgment is reached on Rogers's 80B appeal.[2]

## DISCUSSION

1. <u>Does Rogers Have Standing to Bring This 80B Appeal?</u>

In order to appeal a local board's decision, the appellant must "have appeared before the board of appeals" and "be able to demonstrate a particularized injury as a result of the board's action." *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 6, 746 A.2d 368, 371 (quotations omitted). But, where the appellant is an abutter, he or she "need only allege 'a potential for particularized injury' to satisfy the standing

---

[2]    Due to the stay of the claim for breach, this Court will not address Seacoast's argument that Rogers breached the settlement agreement by bringing this appeal.

2

requirement." *Id.* As this is a low threshold, "a minor adverse consequence affecting the party's property, pecuniary or personal rights is all that is required for the abutting landowner to have standing." *Id.* ¶ 7, 746 A.2d at 371-372.

Applying this standard, Rogers clearly has standing as an abutter who could be affected by Seacoast's RV campground project. But, Seacoast argues that Rogers has no standing because he agreed to dismiss his claims against Seacoast in the 2004 settlement agreement, and the current proposal relates back to the original use permit, which required it to submit a buffering plan. The agreement, however, clearly reserves the right of either party to pursue litigation to enforce compliance with the terms and conditions of the permit. The proposal alters the terms of the original permit, and those original terms were the ones that Rogers waived his right to contest. In essence, this appeal presents the issue of whether the Board properly determined that the amendments complied with the zoning ordinance, which both challenges the new terms and attempts enforcement of the original permit. The settlement agreement does not prevent Rogers from pursuing this appeal.

2. Did the Board Err When It Authorized an Amendment of the Conditional Use Permit?

A municipal board's interpretation of a zoning ordinance is a legal question entitled to de novo review. *Lewis v. Town of Rockport*, 2005 ME 44, ¶ 11, 870 A.2d 107, 110. "A court's interpretation of an ordinance must not create 'absurd, inconsistent, unreasonable or illogical results.'" *Banks v. Maine RSA #1*, 1998 ME 272, ¶ 4, 721 A.2d 655, 657 (*quoting Melanson v. Belyea*, 1997 ME 150, ¶ 4, 698 A.2d 492, 493).

OOB's zoning ordinance requires 100 feet of vegetation as a buffer zone between adjacent properties to create visual screening. § 78-1229(1)(b)-(c). The ordinance also allows the use of artificial screening and buffering materials such as fences and walls. §

3

78-1823. In particular, that section states that "retention of natural vegetation and topography shall be employed as a screening tool *whenever possible.*" *Id.* (emphasis added). In this case, the Board found that Seacoast's proposed amendments to the conditional use permit satisfied both § 78-1229 and § 78-1823 of the ordinance.

Yet, Rogers contends that the plain language of §78-1229 regarding maintenance of vegetation and natural buffers would preclude the use of an artificial buffer such as Seacoast's proposed stockade fence. He contends that the Board should have interpreted this section consistently with the goal of maintaining natural vegetation, as articulated in § 78-1823. Seacoast contends that § 78-1823 expressed the goal of maintaining vegetation but acknowledges that this is not always possible; thus, using natural screening is not always required. It also argues that § 78-1229 does not prohibit fencing and is intended to insure that campgrounds are not too close to the property line, and its fence would accomplish that goal.

Here, the Board conducted a hearing and thoroughly reviewed the proposed amendments to the conditional use permit. The Board approved the amendments and found them to be consistent with the buffering and screening provisions of the ordinance because the natural buffers required under § 78-1229 would still exist. Additionally, in its list of acceptable materials, § 78-1823 specifically mentions non-natural buffers such as fences and walls. Considering the two sections in relation to each other, they prioritize buffering and are designed to minimize the impact of sites like Seacoast's on abutters such as Rogers. Although the ordinance expresses a preference for natural buffering, the limiting language "whenever possible" recognizes that in certain situations, completely natural buffering may not be feasible. If Rogers was correct that only natural vegetation could serve as a buffer, the ordinance likely would not have made specific provision for non-natural buffers in it list of acceptable

4

materials. In addition, there is no express statement that fencing cannot be coupled with natural vegetation to achieve a buffering effect. The Board, therefore, did not commit legal error by interpreting the ordinance to allow fencing as part of an overall plan to appropriately buffer the proposed campground.

3. Did the Board Abuse its Discretion By Allowing Seacoast to Place Its Fence Within Five Feet of Rogers's Property?

Review of board findings is "for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *O'Toole v. City of Portland*, 2004 ME 130, ¶ 8, 865 A.2d 555, 558. The party appealing a board's decision bears the burden of persuasion. *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1996). Rogers contends that it was an abuse of discretion for the Board to permit the fencing within five feet of his property.

At the 2005 hearing, the Board discussed placement of the fence. One member seemed confused about why the Board would require Seacoast to replace trees it incorrectly removed if fencing was going to be allowed. Another member responded that the fence would ensure that further tree removal along the property line would not occur. The Board then decided not to allow fencing within five feet of Rogers's property. As Seacoast point out, moving the fence too far inward would prevent it from using a substantial portion of its property. It was within the Board's discretion to limit the placement of the fence as it did, especially where the ordinance does not set forth guidelines for placement of fencing near boundary lines. Given this Court's deferential review, it cannot be said that the proposed placement of the fence constituted an abuse of the Board's discretion.

5

4.    Was There Substantial Evidence in the Record to Support the Board's Finding That the Project Would Not Affect the Value of Rogers's Property?

When assessing specific factual findings, this Court is "limited to determining whether the record contains evidence to justify the Board's determination." *Lewis v. Maine Coast Artists*, 2001 ME 75, ¶ 14, 770 A.2d 644, 650.

Rogers contends that no evidence was presented at the hearing as to the potential for positive or negative impact on property values in the form of testimony of real estate professionals or other anecdotal evidence. He claims that the Board should have required such evidence before finding that property values would not decrease, as the ordinance is intended to mitigate the effects campgrounds have on abutters.

In its findings, the Board explicitly determined that the value would not suffer, basing that finding on the fact that the fence, coupled with the vegetation, provides 100% of the required buffering between Rogers and Seacoast. It also referenced the 2004 findings of fact, which were more detailed regarding impact on property values. Those findings further specify steps that would be taken to minimize impact on abutters, such as maintaining natural buffering with evergreen trees, implementing park rules and regulations, and directing lighting toward the interior. Impact on the property values of abutters was not required to be a pivotal consideration in the Board's decision, but in its discussions, the Board seems to have considered that fencing might actually improve Rogers's situation because it would further shield his property from Seacoast's. Because this Court's review is a deferential one, there was sufficient evidence in the record to support the finding that Seacoast's plan would not adversely affect the property values of abutters.

6

## CONCLUSION

The appeal is Denied and the Board's decision is Affirmed.

The clerk may incorporate the decision in the docket by reference.

Dated:     May 14, 2007

G. Arthur Brennan
Justice, Superior Court

PLAINTIFF:
CRAIG J RANCOURT ESQ
13 CRESCENT ST
BIDDEFORD ME   04005

DEFENDANT - TOWN OF OLD ORCHARD BEACH
CHRISTOPHER L. VANIOTIS, ESQ.
BERNSTEIN SHUR SAWYER & NELSON
PO BOX 9729
PORTLAND ME   04104-5029

DEFENDANT - SEACOAST RV RESORT LLC
WILLIAM S KANY ESQ
SMITH ELLIOTT SMITH & GARMEY
PO BOX 1179
SACO ME   04072