2009 ME 104

**In re MOTION TO QUASH BAR COUNSEL SUBPOENA.**

Supreme Judicial Court of Maine.

Submitted on Briefs: July 29, 2009.

Decided: Oct. 27, 2009.

William J. Kayatta, Jr., Esq., Catherine R. Connors, Esq., Benjamin W. Jenkins, Esq., Pierce Atwood LLP, Portland, ME, for Verrill Dana LLP.

J. Scott Davis, Bar Counsel, Board of Overseers of the Bar, Augusta, ME, Gisele M. Nadeau, Esq., Portland, ME, for the Board of Overseers of the Bar.

Panel: CLIFFORD, ALEXANDER, LEVY, MEAD, and GORMAN, JJ.*

* Clifford, J., participated in the initial conference while he was a Justice, and, on order of the Chief Justice, was authorized to continue his participation in his capacity as Active Retired Justice.

Majority: CLIFFORD, LEVY, MEAD, and GORMAN, JJ.

Dissent: ALEXANDER, J.

MEAD, J.

[¶ 1] The law firm of Verrill Dana LLP (the firm) appeals from an order entered by a single justice of this Court (*Silver, J.*) denying its motion to quash a subpoena issued to its former general counsel by Bar Counsel for the Board of Overseers of the Bar. The subpoena seeks records that the firm claims are protected from disclosure by the attorney-client privilege. Bar Counsel asserts that this interlocutory appeal should be dismissed, or, as he argued successfully to the single justice, that the crime-fraud exception created by M.R. Evid. 502(d)(1) acts to remove the firm's privilege claim.[1] Because we cannot determine from the single justice's order whether the correct test for applying the crime-fraud exception was employed, we vacate the order and remand for clarification, and for further findings of fact and conclusions of law that the single justice deems necessary and appropriate.

## I. BACKGROUND

[¶ 2] The origins of this matter lie in the misconduct of former attorney John Duncan, a former partner in the firm. Duncan's misconduct was detailed in this Court's order disbarring him for life. *Board of Overseers of the Bar v. Duncan,* BAR–08–3 (July 8, 2008) (Silver, J.). This case arises from Bar Counsel's investigation into the conduct of certain other attorneys at the firm in handling the discovery and reporting of Duncan's actions.

[¶ 3] In June 2007, Duncan's former secretary reported to at least two attorneys at the firm that Duncan had stolen a significant amount of client funds. *Id.* She eventually left Verrill Dana, retained counsel to represent her in a potential claim against the firm, and filed a grievance complaint against Duncan and several other Verrill Dana attorneys with the Board of Overseers of the Bar (Board). The firm engaged Attorney Gene Libby, then a Verrill Dana partner and its general counsel since 1996, to represent it in the matter. Libby undertook an investigation, during which he amassed numerous e-mails and other documents; he also wrote memos to others and to the file detailing both his conclusions and how he believed the evidence he had gathered supported them. Libby resigned from Verrill Dana on November 26, 2007.

[¶ 4] Two days later, Libby wrote to Bar Counsel, reporting that "[d]uring the course of my investigation, I acquired what I believe is unprivileged knowledge of violations of the Maine Bar Rules that requires reporting." Because the firm claimed that the knowledge Libby referred to was privileged, he did not disclose any specifics. The firm eventually reached an agreement with Libby concerning the terms of his departure; under its provisions Libby agreed not to disclose any information conveyed to him as general counsel unless required to do so by court order.

[¶ 5] On September 8, 2008, Bar Counsel issued a subpoena to Libby, compelling both his testimony and the production of any documents supporting his report made ten months earlier. The firm filed a motion to quash with the Board, asserting

---

**1.** Maine Rule of Evidence 502(d)(1) provides: "There is no privilege under this rule ... [i]f the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud."

that the subpoena sought information protected by the attorney-client privilege and the work product doctrine. Bar Counsel's response to the motion asserted that the crime-fraud exception applied and acted to remove any privilege. The parties agreed to submit the dispute to a single justice of this Court. After reviewing the disputed documents *in camera*, the single justice found that:

> During Mr. Libby's investigation of the ... complaint against the firm Mr. Libby may have uncovered criminal conduct by partners of Verrill Dana LLP. Pursuant to M.R. Evid. 502(d)(1) there is no privilege under Rule 502 pursuant to the furtherance of crime or fraud. This exception prevails here and all of the documents provided *in camera* to this Court fall under this exception.

The justice ordered that all of the disputed documents be turned over to Bar Counsel. This appeal followed.

## II. DISCUSSION

### A. Jurisdiction

[¶ 6] Before addressing the merits of the firm's appeal, we must first decide whether we have the authority to entertain it. Ordinarily, the Maine Bar Rules require that a motion to quash a subpoena issued by Bar Counsel be resolved by the Board:

> The Board, the Grievance Commission or the Chair of any panel thereof, upon motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith, may quash or modify any subpoena issued for appearance before Bar Counsel, the Board, the Grievance Commission or panels thereof, if the subpoena is unreasonable or oppressive.

M. Bar R. 7.3(m)(1). The Rule does not contemplate this Court ruling on a motion to quash, at least before the Board has

done so, regardless of the parties' wishes or agreement to use an alternate procedure.

[¶ 7] Furthermore, we have said that "we do not permit appeal from the denial of a motion to quash. Instead, the witness must appear ... and testify or risk a finding of contempt. Only upon a judgment of contempt ... is the issue ripe for appeal." *In re Willoughby*, 487 A.2d 636, 638 (Me.1985); *see State v. Grover*, 387 A.2d 21, 22 (Me.1978). In this case, however, notwithstanding the required procedure that a party seeking to challenge a subpoena issued by Bar Counsel must ordinarily follow, we find, as both Bar Counsel and the firm urge, that we have the inherent authority to decide this appeal. We further conclude that in these unusual circumstances we should do so.

[¶ 8] Absent "exceptional circumstances," we will honor our procedural rules. *In re Application of Feingold*, 296 A.2d 492, 496 (Me.1972). Nevertheless, this Court has the inherent and ultimate authority, independent of any rule, to regulate the practice of law and the conduct of attorneys in this State. *See id.*; *Board of Overseers of the Bar v. Lee*, 422 A.2d 998, 1002 (Me.1980) ("the ultimate power to regulate the conduct of attorneys is inherently in the judicial department"). The Rules themselves recognize this fundamental principle: "Any attorney admitted to, or engaging in, the practice of law in this State shall be subject to the Court's supervision and disciplinary jurisdiction...." M. Bar R. 1(a). Ordinarily, the Court's authority with respect to the Bar Rules may be exercised by a single justice, "subject to appropriate review by the Law Court." M. Bar R. 1(d). The more uncertain issue before us is not whether we have the authority to decide the firm's appeal,

but whether we should choose to exercise that power under these circumstances.

[¶ 9] For several reasons, we conclude that given the unusual procedural posture of this case, and the importance of the privilege at issue, we should reach the merits. *See Fiber Materials, Inc. v. Subilia,* 2009 ME 71, ¶ 31, 974 A.2d 918, 928 (discussing importance of attorney-client privilege). In most cases, the person or entity interested in quashing a subpoena is the one compelled to act, either by testifying or by producing documents or other evidence. Here the person subpoenaed by Bar Counsel, Attorney Libby, is willing to comply. The firm, which is the entity with the claim of attorney-client privilege at stake, cannot disobey the subpoena because it did not receive a subpoena. The only procedural mechanism for effectively protecting the firm's privilege claim is the one it chose—moving to quash Libby's subpoena before he could comply with it.[2]

[¶ 10] Bar Counsel, having agreed to bring the motion to quash before the single justice, argues that even though this Court has the power to hear the firm's appeal from the single justice's decision, we should nonetheless dismiss it as interlocutory. It is well-established that "[o]rdinarily, the final judgment rule prevents a party from appealing a . . . court's decision on a motion before a final judgment has been rendered." *Id.* ¶ 12, 974 A.2d at 924. However, one of the recognized exceptions to the rule, the death knell exception, allows an interlocutory appeal to be heard "if substantial rights of a party will be irreparably lost if review is delayed until final judgment." *Id.* ¶ 14, 974 A.2d at 924 (quotation marks omitted). "A right is irreparably lost if the appellant would not have an effective remedy if the interlocu-

tory determination were to be vacated after a final disposition of the entire litigation." *Id.* (quotation marks omitted). Stated differently, if an interlocutory order "has the practical effect of permanently foreclosing relief on a claim, that order is appealable." *Id.* (quotation marks omitted).

[¶ 11] Here, the firm seeks to protect information it claims is privileged, and that is not yet known to anyone outside of the firm other than its former general counsel. If we do not address the denial of the firm's motion to quash now, the information will become known to Bar Counsel. That is a result that cannot be undone on direct appeal following a final judgment. This situation is not analogous to the one we analyzed in *Lewellyn v. Bell,* where, in the face of a claim that documents sought pursuant to a motion to compel were protected by attorney-client privilege, we held that no exception to the final judgment rule applied, in part because "it is uncertain what information, if any, will be required to be disclosed . . . [therefore] the asserted harms are merely speculative." 635 A.2d 945, 947 (Me.1993). In this case, the single justice reviewed all of the documents sought by Bar Counsel's subpoena *in camera* and found, not as a matter of speculation but as a matter of fact, that they are potentially damaging. Because the firm stands to irreparably lose a substantial right if we do not hear its appeal, the death knell exception to the final judgment rule applies.

[¶ 12] Finally, we elect to reach the merits of the firm's appeal now in the interest of judicial economy because the motion has already been decided by the single justice, and the issues have been

---

**2.** Bar Counsel agrees that Verrill Dana has standing to challenge the subpoena and to

bring this appeal.

fully briefed. As a practical matter, it makes little sense to remand the motion back to the Board, given the substantial likelihood that we would then be called upon to decide the same issues in the near future. *See, e.g., Amica Mut. Ins. Co. v. Estate of Pecci*, 2008 ME 93, ¶ 4 n. 1, 953 A.2d 369, 371 (stating that, notwithstanding parties' failure to comply with customary procedure, "[a]s a matter of judicial economy ... we address the issues on appeal"); *Lewis v. Town of Rockport*, 2005 ME 44, ¶ 11 n. 4, 870 A.2d 107, 110 ("We proceed to the merits in the interest of judicial economy and because the parties have thoroughly briefed all issues.").

## B. The Crime–Fraud Exception

[¶ 13] The attorney-client privilege claimed by the firm is "the oldest of the privileges for confidential communications known to the common law." *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (quotation marks omitted); M.R. Evid. 502(b). Its purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Zolin*, 491 U.S. at 562, 109 S.Ct. 2619 (quotation marks omitted). To fulfill that purpose, clients must "be free to make full disclosure to their attorneys of *past* wrongdoings." *Id.* (quotation marks omitted) (emphasis added).

[¶ 14] When an attorney's advice is sought in order to commit or conceal *ongoing* or *future* wrongdoing, however, the "broader public interests in the observance of law and administration of justice" are not served, and the privilege does not protect those communications. In 1933, the Supreme Court said: "The privilege takes flight if the [attorney-client] relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told." *Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933). Fifty-six years later, the Court expounded on the rationale for a "crime-fraud" exception to the privilege:

> [S]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose. The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection—the centrality of open client and attorney communication to the proper functioning of our adversary system of justice—ceas[es] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing*, but to *future wrongdoing*. It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the "seal of secrecy" between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime.

*Zolin*, 491 U.S. at 562–63, 109 S.Ct. 2619 (quotation marks omitted).

[¶ 15] Maine law recognizes several exceptions to our rule of attorney-client privilege. *See* M.R. Evid. 502(d). Among them is a crime-fraud exception:

> **(d) Exceptions.** There is no privilege under this rule:
>
> (1) *Furtherance of crime or fraud.* If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud.

M.R. Evid. 502(d)(1).

[¶ 16] Because we have not had occasion to discuss the Maine crime-

fraud exception previously, we take this opportunity to explain its requirements and the requisite burden for its application. Like its federal counterpart, the crime-fraud exception established by Rule 502(d)(1) applies to a continuing or future crime or fraud, not to purely past conduct that is not ongoing. *See* Field & Murray, *Maine Evidence* § 502.6(1) at 221–22 (6th ed. 2007). The exception may apply, however, if the lawyer's services are used to actively conceal past wrongdoing. *Id.* at 222. ("If the lawyer's knowledge is of both a past and a continuing wrong, it is not privileged."); *see In re Grand Jury Subpoenas,* 144 F.3d 653, 660 (10th Cir. 1998) (stating that crime-fraud exception "appl[ies] if the [lawyer's] assistance was used to cover up and perpetuate the crime or fraud").

■■■■■ [¶ 17] Having defined the scope of the exception as including continuing or future conduct, but excluding past acts, we turn to the equally important question of the client's intent in employing the attorney. We agree with the First Circuit Court of Appeals when it said: "[I]t is not enough ... that the client is guilty of crime or fraud. Forfeiture of the privilege requires the client's *use or aim to use* the lawyer to foster the crime or fraud." *In re Grand Jury Proceedings,* 417 F.3d 18, 23 (1st Cir.2005). The applicability of the exception turns on whether the client intended to use the attorney's services, or advice, to commit or plan to commit an ongoing or future crime or fraud; the attorney's intent is irrelevant. *See Clark,* 289 U.S. at 15, 53 S.Ct. 465

("Nor does the loss of the privilege depend upon the showing of a conspiracy, upon proof that client and attorney are involved in equal guilt. The attorney may be innocent, and still the guilty client must let the truth come out."); *United States v. Schussel,* 291 F. App'x 336, 345 (1st Cir.2008) ("To successfully invoke the crime-fraud exception, the government must ... show[ ] that the attorney's assistance was sought in furtherance of a crime or fraud." (quotation marks omitted)).

■■■■ [¶ 18] Combining these requirements of scope and intent, we adopt the test used by the First Circuit that must be satisfied before the crime-fraud exception can pierce a client's claim of attorney-client privilege: "(1) that the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; *and* (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity." *Schussel,* 291 F. App'x at 345; *In re Grand Jury Proceedings,* 417 F.3d at 22.

■■■■ [¶ 19] While the First Circuit has described the burden borne by the party seeking to invoke the crime-fraud exception as a requirement to make a "prima facie showing," or to establish a "reasonable basis" in order to find that the test for piercing the privilege has been satisfied,[3] we conclude that the higher standard of proof by a preponderance of the evidence is necessary to protect this important evidentiary principle. We note with

---

3. *See United States v. Schussel,* 291 F. App'x 336, 345 (1st Cir.2008) ("To successfully invoke the crime-fraud exception, the government must make a prima facie showing that the attorney's assistance was sought in furtherance of a crime or fraud." (quotation marks omitted)); *In re Grand Jury Proceedings,* 417 F.3d 18, 23 (1st Cir.2005) ("it is

enough to overcome the privilege that there is a reasonable basis to believe that the lawyer's services were used by the client to foster a crime or fraud"). The First Circuit quantifies the "reasonable basis" standard as "something less than a mathematical (more likely than not) probability." *In re Grand Jury Proceedings,* 417 F.3d at 23.

approval the reasoning of the Supreme Judicial Court of Massachusetts:

> [T]he crime-fraud exception is a narrow one. Unless the crime-fraud exception applies, the attorney-client privilege may not be invaded, even where the communication concerns possible future criminal conduct, because an informed lawyer may be able to dissuade the client from improper future conduct, and, if not, under the ethical rules may elect in the public interest to make a limited disclosure of the client's threatened conduct. The party invoking the crime-fraud exception must prove by a preponderance of the evidence that the exception applies.

*In re A Grand Jury Investigation,* 437 Mass. 340, 772 N.E.2d 9, 21–22 (2002) (quotation marks omitted).

### C. Verrill Dana's Motion to Quash

[¶ 20] In order to decide the validity of the firm's argument on appeal, we must examine the single justice's order to see if the correct legal test was applied, and then examine the record to see whether it supports the single justice's conclusion that the crime-fraud exception applies on these facts to defeat the firm's claim of attorney-client privilege as to all of the documents at issue. We review the correctness of the Court's legal test de novo, and its findings of fact for clear error. *See State v. Johnson,* 2009 ME 6, ¶ 17 n. 4, 962 A.2d 973, 979.

[¶ 21] In discussing the crime-fraud exception, the single justice found that:

> During Mr. Libby's investigation of the . . . complaint against the firm Mr. Libby may have uncovered criminal conduct by partners of Verrill Dana LLP. Pursuant to M.R. Evid. 502(d)(1) there is no privilege under Rule 502 pursuant to the furtherance of crime or fraud. This exception prevails here and all of the docu-

ments provided *in camera* to this Court fall under this exception.

[¶ 22] We are unable to determine from the Court's findings whether it was referring to only past potential criminal conduct, which would weigh against the applicability of the exception, or to ongoing wrongdoing; whether it found that the firm intended to use Libby's services or advice to facilitate or conceal criminal or fraudulent activity; or whether it found that the crime-fraud exception applied by a preponderance of the evidence. Accordingly, we must vacate the order of the single justice and remand for application of the appropriate standard as set forth in this opinion. On remand, the Court should consider for each of the firm's clients at issue whether documents concerning transactions with that client meet the test for application of the exception, or whether some or all of them remain privileged.

The entry is:

Order denying motion to quash vacated; remanded to the single justice for further proceedings consistent with this opinion.

### ALEXANDER, J., dissenting.

[¶ 23] I respectfully dissent. At this preliminary stage of the proceeding, Bar Counsel may seek information that "appears reasonably calculated to lead to the discovery of admissible evidence." *See* M.R. Civ. P. 26(b)(1). The opposition to the subpoena did not demonstrate without doubt that compliance with the subpoena could not lead to the discovery of admissible evidence. Accordingly, the Single Justice appropriately denied the motion to quash. Furthermore, the single justice appropriately made only limited findings, because the evidence is yet to be developed, and detailed findings might suggest prejudgment of issues that are not yet ready for fact-finding.

[¶ 24]  I would affirm the decision of the Single Justice, and I would not comment about facts and inferences from facts before discovery is completed and the facts can be addressed in an appropriate forum.