2009 ME 6

**STATE of Maine**

v.

**Dayle Lynn JOHNSON.**

Supreme Judicial Court of Maine.

Argued: June 18, 2007.
Decided: Jan. 13, 2009.

Paul M. Boots, Esq., (orally), Law Offices of Paul M. Boots, P.A., Portland, ME, Attorney for Dayle L. Johnson.

G. Steven Rowe, Attorney General, James M. Cameron, Asst. Atty. Gen. (oral-

ly), Office of the Attorney General, Augusta, ME, Attorneys for the State of Maine.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.*

SAUFLEY, C.J.

[¶ 1] Dayle Lynn Johnson, operator of the Village Pub in Parsonsfield, appeals from judgments of conviction of unlawful trafficking in scheduled drugs (Class C), 17–A M.R.S. § 1103(1–A)(E) (2008), and cultivating marijuana (Class D), 17–A M.R.S. § 1117(1)(B)(3) (2008), entered by the Superior Court (York County, *Brennan, J.*) upon her conditional guilty pleas. She argues that the court erred in denying her motion to suppress evidence obtained as a result of a search warrant that was based in part on information obtained through an immediately preceding administrative inspection of her pub. Johnson contends, among other things, that the initial administrative inspection violated her Fourth Amendment rights because it was a pretextual inspection executed to obtain evidence to justify the search warrant and it exceeded the scope of a valid regulatory inspection. We conclude that the administrative inspection, although not illegal as a pretextual search, did exceed the permissible scope of an administrative inspection, therefore violating Johnson's Fourth Amendment rights, and we vacate the judgment and remand for further proceedings.

## I. BACKGROUND

[¶ 2] The motion court found the following facts, which are supported by the record. Johnson operated an establishment known as the Village Pub in Parsonsfield. The pub operated on the ground floor of a colonial-style house, and the upper stories were used as Johnson's living space and storage. Johnson's business required a liquor license and was subject to regulation and inspection by representatives of the Liquor Licensing and Inspections Unit of the Department of Public Safety.[1]

[¶ 3] In September 2004, an agent of the Maine Drug Enforcement Agency received information that marijuana was being cultivated on the premises of the Village Pub. In addition, there were allegations that Johnson had undertaken unauthorized renovations of the bathrooms at the pub that would have required approval from the Liquor Inspections Unit or the State Fire Marshal's Office or both.

[¶ 4] Following inter-agency discussions, the Liquor Inspections Unit, the Fire Marshal's office, and the MDEA agreed that a regulatory inspection of the tavern would be performed. An MDEA agent prepared a draft search warrant affidavit for use in the event that drugs were found during the inspection.

---

* Justice Susan Calkins sat at oral argument and participated in the initial conference but retired before this opinion was certified.

1. The licensing and inspection entity was previously called the Bureau of Liquor Enforcement, but has since become the Liquor Licensing and Inspections Unit, which, under the general provisions of Title 28–A, is the "division within the Department of Public Safety designated by the commissioner to enforce the law relating to the manufacture, importation, storage, transportation and sale of all liquor and to administer those laws relating to licensing and collection of taxes on malt liquor and wine." 28–A M.R.S. § 2(6) (2008). Section 2(6) was recently amended to remove reference to the "Bureau of Liquor Enforcement," P.L.2003, ch. 451, § T–7 (effective June 12, 2003), but some statutes and the applicable regulations still refer to the Bureau. For convenience, we refer to the Liquor Licensing and Inspections Unit throughout this opinion as the Liquor Inspections Unit or the Unit.

[¶ 5] On the date of the inspection, five representatives of the Liquor Inspections Unit and the Fire Marshal's office met with MDEA agents before proceeding to inspect the premises. The MDEA agents waited outside during the inspection but were available to assist if the inspection revealed illegal drug activity. In the early evening, during regular business hours, one representative from the Liquor Inspections Unit and four from the Fire Marshal's office entered the pub. At the time, a bartender was working and Johnson was upstairs in her residence with a friend. The inspectors toured the pub and the kitchen that served it.

[¶ 6] Eventually, marijuana leaves were found, not in the pub or kitchen, but on the third floor landing of the stairwell that connected the three floors of the building. This information was passed on to the MDEA agents, who then entered the building and secured the pub while another MDEA agent applied for a search warrant.

[¶ 7] Based in part on the discovery of the marijuana leaves, a warrant was issued that authorized a search of "[t]he structure at 34 Federal Road, Kezar Falls, at Parsonsfield, including The Village Pub, the residence at the second floor, an attached el and garages." The warrant and affidavit described the structure as being "a two and one story" building. The agents conducted a search of all three floors of the premises. They seized evidence of marijuana cultivation, most of which was located in locked storage rooms on the third floor.

[¶ 8] On March 9, 2005, Johnson was charged by indictment with unlawful trafficking in scheduled drugs (Class C), 17–A M.R.S. § 1103(1–A)(E), and marijuana cultivation (Class D), 17–A M.R.S. § 1117(1)(B)(3). Johnson pleaded not guilty and moved to suppress the evidence discovered in the upper floors of 34 Federal Road.

[¶ 9] The court held a hearing on the motion to suppress, after which both parties submitted written arguments. Johnson argued that the administrative inspection was undertaken as a pretext for a criminal investigation and that the MDEA's search pursuant to the warrant exceeded the scope of that warrant. Although Johnson's memorandum highlighted testimony regarding the private nature of the second and third floors, she did not explicitly argue that the inspectors' initial administrative inspection, particularly the extension of the inspection into the stairway, exceeded the authorized scope of a valid administrative inspection.

[¶ 10] Focusing on Johnson's pretext argument, the court entered a written judgment denying the motion, finding that the administrative inspection had "continued into the second and third floors. The inspectors noticed that large sized liquor bottles were stored on the stairway going upstairs to the residence. The inspectors also had concerns whether the stairways and doors to the upper floors met fire codes." The court concluded that, although the Liquor Inspections Unit and the Fire Marshal's representatives would not have performed the regulatory inspection "had not they been encouraged to do so by MDEA agents," the underlying purpose of the inspection, whether regulatory or investigative, was irrelevant, and "[t]he question [was] whether the search was reasonable under traditional Fourth Amendment analysis." The court reasoned that, because establishments holding liquor licenses are closely regulated and subject to regulatory inspections without a warrant, contraband "found in plain view" during such inspections is legally subject to seizure and the regulatory inspection conducted at the Village Pub was permissible. The court also concluded that, al-

though the language of the resulting search warrant was somewhat ambiguous, a fair reading of the warrant and supporting affidavit clearly indicated that the officers sought to search the entire building that housed the pub as well as any outbuildings.

[¶ 11]  The court did not make any factual findings regarding the circumstances under which the liquor inspector or the Fire Marshal's representatives entered *into the stairwell off the kitchen.* Nor did the court opine on the authority of either the liquor inspector or the Fire Marshal's representatives to extend the administrative inspection to the third floor where the marijuana leaves were discovered.  The parties did not present argument on these issues and did not seek further findings or conclusions of law following the court's ruling on the motion to suppress.  *See* M.R.Crim. P. 41A(d).

[¶ 12]  Despite this lack of factual findings, the testimony offered at the suppression hearing reveals certain undisputed facts.  The witnesses agreed that the marijuana that was discovered on the premises was not found within the pub area or kitchen and that it was not found by a liquor inspector.  Rather, the marijuana leaves were discovered by the Fire Marshal's representatives while conducting an inspection for fire code violations on the stairs and the third floor landing of the staircase that led to the residential areas of the building.  To reach the marijuana, the Fire Marshal's representatives had to go through a closed door in the kitchen, up one flight of stairs past the bathroom that was the subject of the liquor inspector's concern, past a desk on the second floor landing being used for bar-related activities, and up a second flight of stairs

to the third floor.[2]  Although there was conflicting testimony regarding whether the liquor inspector accompanied the Fire Marshal's representatives during the initial entry into the stairwell, the parties agree that the liquor inspector did not proceed all the way to the third floor landing until later that day, after the Fire Marshal's representatives had already searched that area and discovered the marijuana leaves and after the MDEA agents had secured the pub.

[¶ 13]  Following the denial of her motion to suppress, Johnson entered a conditional guilty plea, upon which the court imposed a one-year sentence for unlawful trafficking, all but sixty days suspended, and a concurrent sixty-day sentence for marijuana cultivation, with execution stayed pending appeal, plus $35 in assessments and $220 in restitution to the MDEA. Johnson timely appealed from her convictions.

## II.  DISCUSSION

[¶ 14]  On appeal, Johnson argues that (A) the warrant that was ultimately issued failed to provide an adequate description of the premises subject to search and (B) the administrative inspection that led to the procurement of that warrant violated the Fourth Amendment both because it was a pretext for a criminal investigation and because it exceeded the scope of a permissible administrative inspection.

[¶ 15]  The State, in refuting Johnson's pretext argument, contends that the subjective intent of the individuals conducting the administrative inspection is irrelevant, and that the appropriate inquiry is to examine the programmatic purpose underlying the regulatory scheme authorizing such inspections.  The State argues that

---

**2.**  The court did not find that the initial inspection proceeded into any rooms or storage areas on the second or third floors.  The parties agree that the inspection of those rooms and storage areas, where the majority of evidence of marijuana cultivation was discovered, occurred only after the MDEA obtained a search warrant.

unannounced, warrantless liquor inspections conducted pursuant to Maine statutes and regulations are constitutional, and that the administrative inspection of the pub as conducted in this instance was reasonable under this standard. The State also concedes on appeal that the Fire Marshal's representatives lacked the independent authority to conduct a warrantless administrative inspection of the premises for fire code violations, citing *See v. City of Seattle*, 387 U.S. 541, 541–46, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967),[3] and it further concedes that no consent was given to enter the upstairs portion of the premises. However, the State argues that, in its view, because the liquor inspector had the ultimate authority to inspect the third floor, the search of that area by the Fire Marshal's representatives for the purposes of assisting in the liquor inspection was reasonable, or, alternatively, that the liquor inspector would have inevitably discovered the marijuana.

[¶ 16] If Johnson's theory of pretext is correct, the administrative inspection would have been invalid *ab initio* and our analysis would end there. Similarly, if the search warrant did not authorize the search of the third floor, the evidence of the marijuana plants would have to be suppressed. *See State v. Lehman*, 1999 ME 124, ¶ 8, 736 A.2d 256, 260, *cert. denied*, 528 U.S. 1154, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000). If, however, the motion court correctly determined that the administrative inspection that generated evidence to justify the warrant was not made illegal by the tip from, and involvement of, the MDEA, and that the search

warrant allowed a search of the third floor, then the remaining question is whether the extended inspection by the Fire Marshal's representatives was reasonable pursuant to the Fourth Amendment. Because Johnson focused her suppression argument before the motion court on the theory that the entire administrative inspection was illegal because it was "pretextual," neither counsel nor the court focused on the physical limits of the inspection, that is, the extent of the licensed premises in contrast to the residential portion of the building. As a result, the critical question of whether the inspection as conducted extended beyond the licensed premises was not addressed.

[¶ 17] We thus first briefly address the adequacy of the property description in the search warrant. We then analyze whether the administrative inspection was unconstitutional because it was a pretext for an illegal criminal investigation. Because the State argues that the inspection of the third floor stairwell is justified by the liquor inspector's ultimate authority to search that area, we next examine the scope of that authority and determine whether unannounced, warrantless liquor inspections are unreasonable under the criteria set forth by the United States Supreme Court in *New York v. Burger*, 482 U.S. 691, 702–03, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). Finally, we examine whether the inspection of the Village Pub as conducted exceeded the constitutionally permissible scope of an administrative inspection, and, if so, whether any other exception to the warrant requirement applies.[4]

---

3. The State Fire Marshal's authority to conduct inspections for the purposes of detecting fire safety violations is found at 25 M.R.S. § 2392 (2008). In light of the State's concession, we do not opine on the Fire Marshal's authority to conduct warrantless administrative inspections.

4. In reviewing a court's decision on a motion to suppress, we review the factual findings of the motion court for clear error and the legal conclusions drawn from those facts de novo as a matter of law. *State v. Sylvain*, 2003 ME 5, ¶¶ 8–10, 814 A.2d 984, 986–87. We will uphold the motion court's factual findings if

A. Description of the Property in the Search Warrant

[¶ 18] Regarding the adequacy of the property description in the search warrant, we conclude, without further discussion, that the court did not err in reading the warrant to include all three floors by its description of a "two and one story wood frame structure" at 34 Federal Road. *See State v. Wilcox,* 2004 ME 7, ¶ 8, 840 A.2d 711, 713–14; *State v. Dignoti,* 682 A.2d 666, 670–71 (Me.1996). Accordingly, the search of the entire building pursuant to the warrant was legal if the inspectors procured the evidence that justified that warrant without offending the Fourth Amendment.

B. Constitutionality of the Administrative Inspection

1. Administrative Inspections as a Pretext for Criminal Investigations

[¶ 19] Johnson primarily challenged the liquor inspector's administrative inspection as being unreasonable because it was a pretext for conducting a criminal investigation. The Fourth Amendment allows reasonable statutory and regulatory inspections of closely regulated businesses for administrative purposes if those inspections are limited appropriately. *See Burger,* 482 U.S. at 702–03, 107 S.Ct. 2636; U.S. Const. amend. IV. A warrantless administrative inspection of a closely regulated business is reasonable and does not violate the Fourth Amendment if three criteria are met: (1) there is a substantial government interest behind the regulatory scheme that authorizes the inspection; (2) the warrantless inspections are "'necessary to further [the] regulatory scheme'"; and (3) the certainty and regularity of the inspection program provides a "'constitutionally adequate substitute for a warrant.'" *Burger,*

evidence in the record supports those find-

482 U.S. at 702–03, 107 S.Ct. 2636 (quoting *Donovan v. Dewey,* 452 U.S. 594, 600, 603, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981)).

[¶ 20] Johnson argues, nonetheless, that the Fourth Amendment prohibits the government from using an administrative inspection "for the purpose of gathering evidence in a criminal case." *Abel v. United States,* 362 U.S. 217, 226, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). In evaluating a scheme that authorizes suspicionless administrative inspections, the United States Supreme Court has identified the objective programmatic purpose of the regulatory scheme—not the intent of the inspecting agents—as guiding the determination of reasonableness under the Fourth Amendment. *See City of Indianapolis v. Edmond,* 531 U.S. 32, 45–47, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). Thus, the programmatic purpose of an unannounced, warrantless administrative inspection must be distinct from the general interest in crime control, regardless of individual officers' subjective intentions.

[¶ 21] That inspections must serve programmatic purposes rather than serving a general interest in crime control does not mean, however, that the liquor inspectors may not engage in an administrative inspection when they have information that a specific crime may be occurring on the premises of a licensed business. *See United States v. Gonsalves,* 435 F.3d 64, 68–69 (1st Cir.2006) (upholding a warrantless administrative inspection that satisfied the objective purpose of protecting consumers from misbranded and adulterated drugs regardless of the subjective intent or suspicion of wrongdoing harbored by the inspector). Indeed, as we discuss below, the liquor enforcement regulations prohibit a licensee from allowing any illegality upon the licensed premises, *see* 9 C.M.R. 16 226

ings. *Id.* ¶ 8, 814 A.2d at 987.

001–2 § 13 (2001), and a liquor inspector is authorized to inspect to enforce this regulation, *see* 28–A M.R.S. § 12 (2008).

[¶ 22] Accordingly, Johnson's argument that the inspection was a pretext for an illegal criminal investigation by the MDEA is misplaced. Even if the inspection were conducted with the understanding that it might reveal criminal activity, the subjective motivations of the inspectors are not relevant to the inquiry we are required to undertake. The proper test to apply, if the pub is a closely regulated business, is the three-part test described in *Burger*, 482 U.S. at 702–03, 107 S.Ct. 2636.

## 2. Reasonableness of Warrantless Inspections Under *Burger*

■ [¶ 23] *Burger* requires us to determine preliminarily whether the pub is a closely regulated business and, if so, to consider whether a substantial government interest supports the regulatory scheme that authorizes the inspection; whether the warrantless inspection was necessary to further the purpose of that regulatory scheme, a purpose distinct from that of *general* crime control; and, finally, whether the certainty and regularity of the inspection program's application provides a constitutionally adequate substitute for a warrant. *Id.* at 702–03, 107 S.Ct. 2636; *Gonsalves*, 435 F.3d at 68–69.

### a. Closely Regulated Business

[¶ 24] In order to determine whether the business is closely regulated, and to better understand the programmatic purpose for site inspections, we must examine the statutes and regulations that authorize the inspection of the premises. Because the State concedes that the Fire Marshal's representatives lacked the authority to conduct a warrantless administrative inspection of a building for purposes of identifying fire code violations, citing *See*, 387 U.S. at 541–46, 87 S.Ct. 1737 we review only the law governing the liquor inspector's authority to enter the licensed premises to inspect for statutory or regulatory violations.

[¶ 25] The Liquor Inspections Unit is responsible for "establish[ing] policies and rules concerning the administration and the enforcement of the liquor laws under its jurisdiction." 28–A M.R.S. § 82 (2008). In addition, the Unit is directed to "[e]nforce the laws relating to the manufacture, importation, storage, transportation and sale of all liquor and administer those laws relating to licensing and the collection of taxes on malt liquor and wine," *id.* § 82(1), and has the authority to adopt rules to administer, clarify, execute, and enforce all laws concerning liquor, and to issue and renew licenses pursuant to Title 28–A, *id.* § 82(2), (3).

■ [¶ 26] Maine law unequivocally puts an operator of a liquor establishment on notice that the business may be subjected to administrative inspections and that a licensee must cooperate with the inspectors. By statute, "[n]o licensee may refuse representatives of the [Liquor Inspections Unit] the right at any time to inspect the entire licensed premises or to audit the books and records of the licensee." 28–A M.R.S. § 12. In addition, "[a]ll records required to be kept … are open for inspection to the alcohol bureau, its representatives or representatives of the [Liquor Inspections Unit] at any time," 28–A M.R.S. § 754(1) (2008), and "[a] licensee may not refuse to allow the alcohol bureau, its representatives or representatives of the [Liquor Inspections Unit] to audit the books and records of the licensee," 28–A M.R.S. § 754(2) (2008).

[¶ 27] The Liquor Inspections Unit has adopted rules that further regulate licensed premises. The rules provide that a license may be suspended or revoked if a licensee violates any rule, regulation, state

law, or municipal ordinance on the licensed premises after legal hours of sale or on days when the sale of liquor is forbidden. 9 C.M.R. 16 226 001–2 § 4 (2001). The rules also prohibit the storage of liquor in a location other than the licensed premises: "No licensee shall, without written consent of the [Liquor Inspections Unit], permit liquor to be kept or stored upon any premise other than those licensed and under the control of the [Unit]. The [Unit] shall have access to any additional premises where empty containers are kept." 9 C.M.R. 16 226 001–2 § 11 (2001). A license holder may not allow disorderly or *illegal* conduct on the licensed premises. 9 C.M.R. 16 226 001–2 § 13.

[¶ 28] In view of this comprehensive statutory and regulatory scheme, there can be no question that Johnson was engaged in a closely regulated business by operating the Village Pub.

b. Application of the Three–Part Reasonableness Test to the Liquor Inspector's Administrative Inspection

[¶ 29] Having determined that Johnson was engaged in a closely regulated business, we must consider whether the administrative inspections authorized by the applicable statutes and regulations are reasonable and therefore consistent with the Fourth Amendment given the programmatic purpose of the liquor inspections, using the three criteria set forth in *Burger*, 482 U.S. at 702–03, 107 S.Ct. 2636.

(i) Substantial Government Interest

[¶ 30] Johnson does not dispute that the first criterion was met; the government interest in regulating licensed liquor providers is well established in federal and Maine jurisprudence. *See Colonnade Catering Corp. v. United States*, 397 U.S. 72, 77, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (characterizing the liquor industry as having been "long subject to close supervision and inspection"); *State Liquor Comm'n v.*

*Gilbert*, 270 A.2d 876, 878–79 (Me.1970) (upholding the constitutionality of an inspection statute and stating that the enterprise of merchandising alcoholic beverages "is a part of an industry which, by its nature and the public interest involved, has been subject to governmental restriction, regulation and control from its beginning").

(ii) Relationship of Warrantless Inspections to the Regulatory Scheme

[¶ 31] With regard to the second criterion, Johnson contends that the asserted reasons for the inspection did not justify an unannounced inspection. In assessing the relationship of the warrantless inspections to the regulatory scheme, we must consider whether unannounced inspections are necessary to serve the specific enforcement needs of the regulatory scheme involved and are not simply a means of detecting criminal conduct generally. *See Donovan*, 452 U.S. at 601–03, 101 S.Ct. 2534; *Gonsalves*, 435 F.3d at 68–69. For instance, if a violation can be concealed, a notice requirement would thwart the purpose of the spontaneous inspection. *See Donovan*, 452 U.S. at 603, 101 S.Ct. 2534.

[¶ 32] As discussed above, in evaluating the purpose of an administrative inspection pursuant to a statutory or regulatory scheme, the relevant inquiry is whether the inspection is essential to the *programmatic* purpose of that scheme; the subjective purpose of the individual officers involved is not relevant. *See Gonsalves*, 435 F.3d at 69.

[¶ 33] To ensure that facilities serving alcoholic beverages remain safe, sanitary, and controlled, the Liquor Inspections Unit is expressly authorized to conduct unannounced inspections of the licensed premises to identify any illegalities. *See* 28–A M.R.S. § 12; 9 C.M.R. 16 226 001–2

§ 13. The spontaneous and unannounced nature of the inspection is essential to the enforcement function of these statutes and regulations. Violations of the liquor statutes and regulations could easily be concealed if an inspection were announced. Bottles of liquor could be moved, illegal substances could be discarded or hidden, bathroom signs could be moved or altered, records not normally kept current could be hurriedly updated, or chronically unsanitary locations could be cleaned to conceal the violation during the inspection.

[¶ 34] Thus, the unannounced inspection authority of the inspectors is essential to support the programmatic purposes of the liquor statutes and regulations. The interests vindicated through liquor inspections differ from the general interest in crime control. Although evidence of crimes may be discovered during such an administrative inspection and reports of illegal drug activity on the premises may prompt liquor inspectors to conduct the inspection, an inspection of the licensed premises is designed to ensure a safe, sanitary, and controlled environment for patrons of a business that serves intoxicating liquor—not to gather evidence of crimes for prosecution.

(iii) Certainty and Regularity of Inspection as an Adequate Substitute for a Warrant

[¶ 35] To assess the third and final criterion, we examine whether the regulatory scheme is specifically tailored to address the regulatory concerns, thereby serving as an adequate substitute for a warrant. *See Donovan*, 452 U.S. at 603–05, 101 S.Ct. 2534. As the United States Supreme Court has stated, the regulatory scheme "must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers."

*Burger*, 482 U.S. at 703, 107 S.Ct. 2636. Thus, the statutes and regulations "must be 'sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his [or her] property will be subject to periodic inspections undertaken for specific purposes,'" and those statutes and regulations must carefully limit the inspection in time, place, and scope. *Id.* (quoting *Donovan*, 452 U.S. at 600, 101 S.Ct. 2534).

[¶ 36] The United States Supreme Court upheld as constitutional mine inspection statutes that defined the frequency of inspection, provided criteria for follow-up visits, and provided a specific mechanism for accommodating identified privacy concerns. *Donovan*, 452 U.S. at 602–05, 101 S.Ct. 2534. Similarly, the Court upheld a statute authorizing the inspection of junkyards because the statute informed those in the industry that such inspections did not "constitute discretionary acts by a government official but [were] conducted pursuant to statute." *Burger*, 482 U.S. at 711, 107 S.Ct. 2636. The Court concluded that the statute appropriately limited the time, place, and scope of inspections to constrain the officers' discretion. *Id.* at 711–12, 107 S.Ct. 2636.

[¶ 37] The regulatory scheme in the present case prohibits licensees from refusing liquor enforcement inspectors "the right at any time to inspect the entire licensed premises." 28-A M.R.S. § 12. In addition, licensees are prohibited from refusing inspectors access to their books and records for the business. *Id.* § 754(2).

[¶ 38] Although these statutes do not mandate the frequency of inspections, the administrative inspections authorized by statute are limited in scope to inspection of the "licensed premises" and the examination of business books and records. In this way, the liquor inspection scheme is

sufficiently limited to protect against unreasonable searches; if liquor inspectors properly perform their statutory duties, they conduct reasonable administrative inspections of closely regulated businesses to ensure that the licensed premises remain safe and controlled as provided in the applicable statutes and regulations. These statutes and regulations place all license holders on notice that their businesses are subject to inspection for compliance with liquor statutes and regulations. Because the license holders have certainty regarding the statutory and regulatory licensing standards and regarding their obligation to permit inspection of the licensed premises for compliance with those standards, the statutory and regulatory scheme authorizing inspections provides an adequate substitute for a warrant to search those premises.

[¶ 39] Accordingly, the court did not err in concluding that the execution of an unannounced inspection of the licensed premises by the liquor inspector was consistent with the Fourth Amendment and that neither the subjective motivation of the inspector nor the information from the MDEA invalidated an otherwise legitimate inspection. The remaining question, then, is whether the warrantless inspection was confined to the licensed premises or, if not, whether it fell within an established exception to the warrant requirement or exclusionary rule.

3. Scope of the Administrative Inspection

[¶ 40] Having determined that warrantless liquor inspections executed pursuant to statutory and regulatory authority are constitutionally permissible,

we must finally assess whether the inspection as conducted in this instance was within the bounds of that authority. *See State v. Melvin*, 2008 ME 118, ¶¶ 13–14, 955 A.2d 245, 249–50. Concepts inherent in both our federal and state constitutions require that all searches and seizures be held to a standard of reasonableness.[5] As we have concluded above, the liquor inspector's statutory and regulatory authority to conduct an administrative inspection was limited to a search *of the licensed premises* for violations of the liquor statutes and regulations. 28–A M.R.S. § 12; 9 C.M.R. 16 226 001–2 § 13. Thus, in this context, the determination of the parameters of the licensed premises, as opposed to Johnson's residence, is critical to the analysis of whether the inspection as conducted exceeded the constitutionally permissible scope of an administrative inspection. *See Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (stating that physical entry into the home is the chief evil at which the Fourth Amendment is directed); *see also Anobile v. Pelligrino*, 303 F.3d 107, 118–21 (2d Cir.2002) (distinguishing between licensed premises and residential areas in determining reasonableness of an administrative inspection under the Fourth Amendment).

[¶ 41] The relevant statutory scheme defines "licensed establishment," in part, as "premises to which a license for the sale of spirits, wine or malt liquor to be consumed on or off the licensed premises applies," 28–A M.R.S. § 2(15) (2008), and "premises" as "all parts of the contiguous real estate occupied by a licensee over which the licensee has direct or indirect control or interest that the licensee uses in the operation of the licensed business and

5. The United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend IV. The

Maine Constitution similarly provides: "The people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures...." Me. Const. art. I, § 5.

that have been approved by the [Liquor Inspections Unit] as proper places for the exercise of the license privilege," 28–A M.R.S. § 2(24) (2008). Applicants for a liquor license are required to include in the application "a description of the premises to be licensed and provide any other material information, description or plan of that part of the premises where the applicant proposes to keep or sell liquor." 28–A M.R.S. § 651(2)(B) (2008).

[¶ 42] During the suppression hearing, the State introduced floor plan diagrams that had been submitted to the Liquor Inspections Unit by Johnson in conjunction with previous applications for liquor licenses. These diagrams delineate the scope of the premises that Johnson was seeking to license and detail the layout of the entire first floor as well as a stairway leading to the second floor bathroom from the pub area. In addition, the record indicates that Johnson was storing liquor bottles on stairs leading from the kitchen to the second floor and that there was a desk on the second floor landing that was apparently being used for bar-related business. Thus, it could be argued that the licensed premises extended from the first floor to the stairs behind the kitchen door, to the second floor bathroom, and included the second floor landing. There is nothing in the record to suggest, however, that the stairs leading to the third floor and the third floor landing where the marijuana leaves were ultimately found were part of the licensed premises.

[¶ 43] Although the liquor inspector testified briefly at the suppression hearing that a residence had been placed in the upper floors without authorization, he clarified that the primary focus of his search was the renovations made to the bathrooms, and there is no evidence that Johnson's living space would have been properly subjected to an administrative inspection. Indeed, the diagrams of the li-censed premises introduced in evidence make no reference to any part of the building beyond the first floor with the exception of the stairway leading to the second floor bathroom from the pub area. The State argues that Johnson had intermingled business and residential purposes to such an extent that a search of the third floor stairwell was justified pursuant to the administrative inspection. Evidence of intermingling of space, however, stopped at the desk on the second floor landing. The only possible indication in the record that the third floor was being used for business purposes was testimony, disputed by Johnson and not found as fact by the motion court, that there was a door marked "bar storage," or words to that effect, on the third floor of the building. However, this discovery was not made until after the Fire Marshal had extended the search up the third floor stairs without out a legitimate basis for doing so, and thus cannot support the State's "mixed use" justification for the administrative inspection.

[¶ 44] Administrative inspections of closely regulated businesses conducted pursuant to statutory and regulatory authority represent an exception to the Fourth Amendment's warrant requirement, see Burger, 482 U.S. at 702, 107 S.Ct. 2636, and the State necessarily has the burden of proof on the applicability of the exception, see State v. Michael M., 2001 ME 92, ¶ 6, 772 A.2d 1179, 1182. As a result, in order to justify the inspection of the third floor stairwell, the State was required to demonstrate by a preponderance of the evidence that this area was part of the licensed premises subject to search. See Michael M., 2001 ME 92, ¶ 6, 772 A.2d at 1182. Had the parties identified the extent of the "licensed premises" at the motion hearing as a key element of the Fourth Amendment analysis, the State might have presented more specific evi-

dence on the point. On the record before us, however, there are simply no facts that suggest that the licensed premises extended beyond the office area on the second floor landing.

[¶ 45] This lack of record support for any authority to extend the inspection beyond the second floor is fatal to both of the theories advanced by the State on appeal that the search of the third floor stairwell was constitutionally justified. First, the State argues that, despite their lack of independent authority, the Fire Marshals' presence was reasonable under the United States Supreme Court's decision in *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). In *Wilson*, the Court held that the presence of news media during the execution of a valid search warrant in a home violated the residents' Fourth Amendment rights. *Id.* at 614, 119 S.Ct. 1692. The Court noted, however, that "the presence of third parties during the execution of a warrant may in some circumstances be constitutionally permissible," *id.* at 613, 119 S.Ct. 1692 such as when the third parties "aided in the execution of the warrant," *id.* at 611, 119 S.Ct. 1692.

[¶ 46] Had the *liquor inspector* been authorized to be on the third floor landing, and had he been accompanied by the Fire Marshal's representatives for the purposes of assisting in that authorized search, then the presence of the Fire Marshal's representatives may have been permissible under *Wilson.* However, as discussed above, there is nothing in the record to suggest that entry beyond the second floor was authorized, and the parties agree that the liquor inspector did not in fact accompany the Fire Marshal's representatives up the third floor stairwell. Furthermore, the motion court found, and the record amply demonstrates, that the sole purpose of the Fire Marshal's representatives in ascending the stairwell from the kitchen was to conduct an inspection for possible fire safe-

ty violations, and their presence and eventual entry into the area where marijuana leaves were found cannot be characterized as that of mere third parties assisting in the administrative inspection conducted by the liquor inspector.

[¶ 47] Second, the State urges us to apply the inevitable discovery exception to the exclusionary rule, arguing that the liquor inspector would have proceeded up the stairwell to conduct the liquor inspection whether or not the Fire Marshals were present. *See State v. Rabon*, 2007 ME 113, ¶¶ 19–20, 930 A.2d 268, 276; *State v. Storer*, 583 A.2d 1016, 1019–20 (Me. 1990). In order to successfully invoke the inevitable discovery exception, the State bore the burden of establishing by a preponderance of the evidence that, despite the unauthorized warrantless search by the Fire Marshal's representatives, the marijuana "inevitably would have been discovered by lawful means." *State v. St. Yves*, 2000 ME 97, ¶ 18, 751 A.2d 1018, 1023 (quotation marks omitted). The State did not meet this burden. It is undisputed that the Fire Marshal's representatives proceeded alone up the third floor stairwell in order to inspect for possible fire code violations and made the initial observation of the marijuana leaves outside the presence of the liquor inspector. The liquor inspector did not travel up those stairs at any time prior to the seizure of the pub by the MDEA agents and did not suggest at the suppression hearing that he would have had *any* reason for doing so before the Fire Marshal's representatives had independently discovered the marijuana. Because there is nothing in this record from which the liquor inspector could have determined that the third floor stairwell was part of the licensed premises for the purposes of his administrative inspection, the liquor inspector could not have lawfully discovered the marijuana leaves, and thus the inevitable discovery exception is inapplicable in this instance.

[¶ 48]   Absent authorization for the inspection of the third floor stairwell pursuant to the administrative authority of the liquor inspector, the State bore the burden of proof on any other applicable exception to the Fourth Amendment warrant requirement, *see Michael M.*, 2001 ME 92, ¶ 6, 772 A.2d at 1182, and it did not meet that burden.   Therefore, the search of the third floor stairwell and landing was unreasonable as a matter of law, *see Melvin*, 2008 ME 118, ¶ 6, 955 A.2d at 247; *Rabon*, 2007 ME 113, ¶¶ 11, 19, 36, 930 A.2d at 274, 276, 282, and we are bound to suppress all evidence obtained as a result of that search as an infringement of Johnson's Fourth Amendment rights.[6]

### III.   CONCLUSION

[¶ 49]   Although we conclude that the administrative inspection by the liquor inspector was not invalidated by the involvement of the MDEA and that the search warrant ultimately obtained contained a sufficient description of the premises to be searched, the warrantless inspection of the stairwell where the marijuana leaves were discovered was not independently authorized by law or warrant, and the State did not meet its constitutionally-imposed burden to prove that an exception to the warrant requirement or exclusionary rule applied.   Thus, the results of the inspection cannot form the basis for a valid search warrant.   Accordingly, we vacate Johnson's convictions and remand for suppression of the evidence obtained through the warrant.

The entry is:

Judgments of conviction vacated.   Remanded to the Superior Court for proceedings consistent with this opinion.

---

**6.**   The State does not contend that there was sufficient probable cause to justify the issuance of the search warrant absent the discovery of marijuana leaves on the premises, and indeed the MDEA sought evidence acquired by the administrative inspection before attempting to secure the warrant.