2008 ME 118

**STATE of Maine**

v.

**Lorne MELVIN.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 27, 2007.

Decided: July 17, 2008.

Michael P. Harman, Esq., Law Offices of Dean A. Beaupain, Millinocket, ME, for Lorne Melvin.

R. Christopher Almy, District Attorney, Bangor, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, and SILVER, JJ.

LEVY, J.

[¶ 1] Lorne Melvin appeals from a judgment of conviction for operating with a false logbook (Class E), 29-A M.R.S. § 558(1–B)(A) (2007), entered on his conditional guilty plea in the District Court (Millinocket, *Stitham, J.*). Melvin contends that the court erred in denying his motion to suppress evidence obtained during a warrantless search of his tractor-trailer. We affirm the judgment.

## I. BACKGROUND

[¶ 2] On the morning of May 26, 2006, while driving north on Interstate 95, Melvin stopped at a mandatory commercial vehicle checkpoint conducted at a rest area in Medway. Law enforcement officers at the checkpoint were inspecting commercial vehicles for violations of motor vehicle and commercial vehicle laws. When Melvin pulled in, a Maine State Trooper licensed as a special agent of the Federal Motor Carrier Safety Administration was inspecting the drivers' licenses and logbooks. The trooper approached Melvin's vehicle and asked Melvin for these documents, which he produced. Upon examining Melvin's logbook, the trooper became concerned about its accuracy and asked Melvin for his toll receipts. Melvin responded that he was not required to show the trooper these receipts. The trooper then asked Melvin to pull over to a parking area, but Melvin refused. The trooper then contacted his supervisor, also a designated special agent of the Federal Motor Carrier Safety Administration, for assistance.

[¶ 3] Upon arriving at Melvin's tractor-trailer, the supervisor asked Melvin to move his vehicle to the parking area, at which time Melvin complied. The supervisor asked Melvin if he had any toll receipts, and Melvin replied that he did not. The supervisor then asked Melvin for his bill of lading. The supervisor testified that as Melvin was searching through his papers to retrieve this document, the supervisor observed toll receipts in a folder. Melvin testified that he kept his toll receipts in a different location from his other documents. The supervisor asked Melvin again if he had any toll receipts, and Melvin again answered that he did not.

[¶ 4] The supervisor then asked to see Melvin's registration. The registration was located on the trailer itself, and thus Melvin had to step out of the cab of his truck and go to the front of the trailer in order to comply with the request. While Melvin was getting the registration, the supervisor stepped onto the running board of the truck and then placed one knee onto the front seat of the truck. From this position he was able to reach the folder

containing Melvin's toll receipts. The first receipt the supervisor examined revealed an inaccuracy in Melvin's logbook. The supervisor then gave the receipts to the trooper, who also found inaccuracies. Accordingly, the trooper issued Melvin a ticket for operating with a false logbook.

[¶ 5] In August 2006, Melvin filed a motion to suppress in the District Court. After a hearing, the court denied the motion, finding that the supervisor's entry into the cab and seizure of the toll receipts were part of a proper administrative search pursuant to the motor carrier regulations. Melvin subsequently entered a conditional guilty plea and this appeal followed.

## II.  DISCUSSION

■ [¶ 6] At issue in this case is whether the warrantless stop and investigation of Melvin's tractor-trailer, the search of the cab of the tractor-trailer, or the subsequent seizure of the toll receipts violated Melvin's right against unreasonable searches and seizures embodied in the Fourth Amendment to the United States Constitution and article I, section 5 of the Maine Constitution. Under these constitutional provisions, a warrantless search is generally unreasonable unless it was conducted pursuant to a recognized exception to the warrant requirement. *See State v. Rabon,* 2007 ME 113, ¶ 11, 930 A.2d 268, 274.

[¶ 7] One such exception to the warrant requirement, originally articulated in *New York v. Burger,* 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987), applies to administrative inspections of pervasively regulated industries. Melvin does not contest that the interstate commercial trucking industry is a pervasively regulated industry, nor do we find any reason to disagree with the numerous courts that have reached this conclusion. *See, e.g., United States v. Maldonado,* 356 F.3d 130, 135 (1st Cir.2004); *United States v. Vasquez–Castillo,* 258 F.3d 1207, 1210 (10th Cir.2001); *United States v. Fort,* 248 F.3d 475, 480 (5th Cir.2001); *United States v. Dominguez–Prieto,* 923 F.2d 464, 468 (6th Cir.1991). Accordingly, we turn to consider whether the stop and search of Melvin's vehicle were constitutional pursuant to the administrative inspection exception to the warrant requirement recognized in *Burger.*

■ [¶ 8] Under *Burger,* a warrantless inspection of a pervasively regulated business is permitted if: "(1) there is a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made; (2) the inspection is necessary to further the regulatory scheme; and (3) the statutory or regulatory scheme provides a constitutionally adequate substitute for a warrant." *United States v. Castelo,* 415 F.3d 407, 409–10 (5th Cir.2005); *see Burger,* 482 U.S. at 702–03, 107 S.Ct. 2636. There is no doubt that the first two prongs are satisfied in this case. We must determine only whether the statute and regulations pursuant to which Melvin's vehicle was stopped and searched satisfy the third prong of the *Burger* test.

[¶ 9] The purpose of the third prong of the *Burger* test is to ensure that any warrantless inspection program is sufficiently certain and regular so that a business subject to the program knows that its property is subject to periodic inspections undertaken for a specific purpose, subject to time, place, and manner limitations.[1] As

---

1. In *Burger,* the Court explained the third prong as follows:

[T]he statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally ade-

we explain below, a Maine statute authorized the administrative stop and investigation of Melvin's vehicle at the mandatory checkpoint, and this statute and the resulting regulatory scheme satisfy the third prong of the *Burger* test. We also conclude that, under the circumstances, the subsequent search of Melvin's cab and the seizure of the toll receipts were constitutionally reasonable. We examine each of these conclusions in turn.

## A. Statutory Authorization for the Stop of Melvin's Tractor–Trailer

■ [¶ 10] Title 29–A M.R.S. § 555 (2007) expressly authorizes the Bureau of State Police to adopt by reference numerous provisions of the Federal Motor Carrier Safety Regulations in order "to promote the safety of the operation of motor carriers over the highways." *See* 29–A M.R.S. § 555(1), (2); 49 C.F.R. Ch. III, Subch. B (2007). The Bureau of State Police has, in fact, adopted by reference various federal regulations governing motor carriers, including the federal rule that interstate truckers are subject to being stopped on a regular basis and that their vehicles may be inspected for violations of these regulations at the discretion of an inspecting officer. *See* 9 C.M.R. 16 222 004 (2008);[2] 49 C.F.R. § 396.9(a) (2007); 49 C.F.R. Ch. III, Subch. B, App. B. The relevant federal rule provides that "[e]very special agent of the [Federal Motor Carrier Safety Administration] (as defined in appendix B to this subchapter) is authorized to enter upon and perform inspections of motor carrier's vehicles in operation." 49 C.F.R. § 396.9(a). The federal regulations further provide:

> Persons appointed as special agents of the Federal Motor Carrier Safety Administration . . . are authorized to enter upon, to inspect, and to examine any and all lands, buildings, and equipment of motor carriers and other persons subject to the Interstate Commerce Act, the Department of Transportation Act, and other related Acts, and to inspect and copy any and all accounts, books, records, memoranda, correspondence, and other documents of such carriers and other persons.

49 C.F.R Ch. III, Subch. B, App. B.

[¶ 11] The Maine regulations promulgated pursuant to 29–A M.R.S. § 555 specifically adopt and incorporate these provisions of the federal regulations, and also provide that a special agent of the Federal Motor Carrier Safety Administration "means a motor carrier inspector, state police officer, municipal officer, or sheriff, who has satisfactorily completed a prescribed course of instruction . . . with respect to the Federal regulations." 9 C.M.R. 16 222 004–2 § 1(D). Because the Legislature has expressly authorized the

---

quate substitute for a warrant. In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers. To perform this first function, the statute must be sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes. In addition, in defining how a statute limits the discretion of the inspec-

tors, we have observed that it must be carefully limited in time, place, and scope.

*New York v. Burger*, 482 U.S. 691, 703, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (second and third alteration in original) (quotation marks and citations omitted).

2. Volume 9 C.M.R. 16 222 004 (2008) was revised in 2007 and 2008. The provisions of the regulations in effect at the time of Melvin's stop and applicable to this appeal, however, have not been substantively changed by the revisions to these regulations.

Bureau of State Police to adopt and enforce the federal regulations relating to the inspection of motor carriers, the statute and the resulting regulatory scheme plainly establish that commercial truckers may be stopped and subjected to administrative inspections when they pull into mandatory checkpoints.

[¶ 12] In addition, the public policy embodied in the third prong of the *Burger* test—that a regulatory inspection scheme must be sufficiently certain as to its application and scope so as to serve the function that would otherwise be served by a search warrant—is achieved here. Melvin had every reason to know that he was subject to being stopped at a mandatory checkpoint to determine whether he was complying with the Federal Motor Carrier Safety Regulations, including the regulations governing maximum driving times and records of duty status. *See* 49 C.F.R. §§ 395.3, 395.8 (2007). Indeed, the identical question presented here was addressed and answered by the United States Court of Appeals for the First Circuit in 2004, more than two years before Melvin's arrest. In *United States v. Maldonado,* the court concluded that Maine's interstate commercial trucking regulatory scheme satisfies the third prong of the *Burger* test because "the federal regulations suitably cabin[ ] the discretion of the enforcing officer"; the regulations "give ample notice to interstate truckers that inspections will be made on a regular basis"; and "commercial drivers are required by law to be familiar with the applicable regulations." 356 F.3d at 136. Because this is a state proceeding, *Maldonado* does not preclude Melvin from challenging Maine's motor carrier inspections under the *Burger* test. Nonetheless, *Maldonado* put all commercial operators on notice that, for purposes of state motor carrier safety enforcement, there was little reason to doubt that the applicable federal and state regulations include the unequivocal requirement that commercial truck drivers submit to warrantless administrative inspections.

B. The Reasonableness of the Search

[¶ 13] Our conclusion that the warrantless stop of Melvin's vehicle to inspect for violations of the motor carrier regulations was constitutional pursuant to the administrative inspection exception to the warrant requirement does not resolve whether the subsequent search of the cab was also justified under this, or any other, exception. The permissible scope of warrantless administrative searches has been a fertile and developing subject of constitutional jurisprudence since *Burger. See, e.g.,* David J. Hardy & Maris E. McCambley, *Administrative and Private Searches for Smoking Articles Conducted Pursuant to the Federal Mine Safety and Health Act: Constitutional Considerations,* 97 W. VA. L.REV. 951 (1995); David A. Christensen, *Warrantless Administrative Searches Under Environmental Laws: The Limits to EPA Inspectors' Statutory Invitation,* 26 ENVTL. L. 1019 (1996). The Court's majority opinion in *Burger* did not purport to provide the exclusive criteria by which the constitutional reasonableness of a specific administrative search is determined. Nor do we ignore that our state constitutional analog to the Fourth Amendment—article I, section 5 of the Maine Constitution—stands as a reminder that, in discharging our constitutional responsibilities, we should not rigidly restrict our inquiry to the *Burger* criteria if, by doing so, we fail to account for the core state constitutional value that all searches and seizures must not be "unreasonable."[3] Accordingly, we

3. Article I, section 5 of the Maine Constitution provides:

The people shall be secure in their persons, houses, papers and possessions from all un-

adhere to the view that the *Burger* criteria are not "an *ironclad checklist* to be rigidly applied on pain of being accused of lack of principle or lack of adherence to stare decisis." *People v. Scott*, 79 N.Y.2d 474, 583 N.Y.S.2d 920, 593 N.E.2d 1328, 1347 (1992) (Kaye, J., concurring) (emphasis added).

[¶ 14] Because the reasonableness of a particular search or seizure is the constitutional focal point, we must ask whether, under the circumstances, the search of the cab of Melvin's tractor-trailer was itself reasonable. *See Castelo*, 415 F.3d at 411. We answer this question affirmatively because the search of the cab of Melvin's tractor-trailer was based on probable cause and in accordance with the automobile exception to the Fourth Amendment's warrant requirement. Deciding this case on the basis of the automobile exception makes it unnecessary for us to further develop the bounds of the administrative search exception. Therefore, we leave for a future day our examination of the circumstances under which a warrantless administrative search is reasonable even though probable cause is absent.

[¶ 15] Pursuant to the automobile exception, "the existence of probable cause justifies a warrantless seizure and reasonable search of a motor vehicle irrespective of the existence of exigent circumstances." *State v. Ireland*, 1998 ME 35, ¶ 7, 706 A.2d 597, 599 (quotation marks omitted). "Probable cause exists when the officers' personal knowledge of facts and circumstances, in combination with any reasonably trustworthy information conveyed to them, would warrant a prudent person to believe that the area to be searched holds evidence of a crime...."

*State v. Drown*, 2007 ME 142, ¶ 8, 937 A.2d 157, 159 (quotation marks omitted).

[¶ 16] After Melvin stopped at the mandatory checkpoint, probable cause to search the cab of his tractor trailer arose because (1) Melvin's logbook looked suspicious and possibly false; (2) Melvin denied being in possession of toll receipts; (3) toll receipts would either corroborate or dispute Melvin's suspicious logbook entries; and (4) the supervising officer personally observed toll receipts inside the cab when Melvin pulled out his folder. Under these circumstances, the search of the cab of Melvin's tractor-trailer and the seizure of the toll receipts were justified because the officer had probable cause to believe that the search would produce evidence of the crime of operating a commercial motor vehicle with a false driver's log, 29–A M.R.S. § 558(1–B)(A).

[¶ 17] Because the initial stop of Melvin's tractor-trailer, the search of the cab, and the seizure of the toll receipts from the cab were reasonable under exceptions to the warrant requirement, the District Court did not err by denying Melvin's motion to suppress.

The entry is:

Judgment affirmed.

---

reasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without a special designation of the place to be searched, and the person or thing to be seized, nor without probable cause—supported by oath or affirmation.