STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-15-262

STATE OF MAINE and
MAINE DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

Plaintiffs,

v.

**ORDER**

DUBOIS LIVESTOCK, INC., and
RANDRICK TRUST,

Defendants.

## I.    Background

### A.    Procedural History

This action was initiated by the Maine Attorney General and the Maine Department of Environmental Protection ("the DEP") (plaintiffs collectively referred to as "the State") against Dubois Livestock, Inc. ("Dubois") and the Randrick Trust ("the Trust"). Dubois operates a composting operation licensed by the DEP. Plaintiffs seek declaratory and injunctive relief and move for a preliminary injunction ordering the defendants to allow DEP to conduct an inspection of the composting facility. The DEP received numerous odor nuisance complaints about the Dubois composting facility between the spring and fall of 2015, and have received several complaints this year.

1

Before the court is the plaintiffs' motion for preliminary injunction and motions to dismiss filed separately by Dubois and the Trust. This matter was heard on May 2, 2016. The parties presented legal arguments, witness testimony, and submitted several exhibits. Considering admissible evidence submitted and the arguments of counsel, the court finds and rules as set forth below.

**B.      Facts**

Dubois Livestock, Inc. ("Dubois") is a corporation organized under the laws of Maine doing business as Dubois Composting Facility ("the composting facility") at 2 Irving Road in Arundel. Dubois composts pursuant to a licensed issued by the Maine Department of Environmental Protection ("the DEP"). The original conditional license was granted on December 20, 1999, allowing Dubois to operate a Type I residual compost facility. (Compl. Ex. A.)[1] The license permitted Dubois to annually compost 1,733 tons of fish waste and 3,467 tons of horse manure on a 50' x 100' concrete pad. (Id.) The license was most recently amended in January 2013 to process 29,000 total tons of waste material annually and to add a second 120' x 250' concrete pad. (Compl. Ex. C.)

In May 2015, the Dubois composting facility came to the attention of the DEP after citizens complained of smells that were believed to be wafting from the property. On June 15, 2015, DEP Environmental Specialist Carla Hopkins ("Hopkins") emailed Dubois stating that she and DEP Environmental Specialist Mike Clark ("Clark") would be conducting a "routine inspection" of the composting facility on June 18, 2015. (Compl. Ex. E.) Clark is the DEP project manager overseeing the Dubois composting facility. Dubois requested an alternative inspection date. (Id.) Hopkins and Clark

---

[1] The court may consider the DEP license decisions attached to the complaint because they are public records referred to in the complaint and their authenticity has not been disputed. *See Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 14, 843 A.2d 43.

conducted an inspection on June 24. (Clark Aff. ¶ 19.) The DEP received additional complaints during the summer of 2015 through October 2015. Dubois rebuffed DEP requests to conduct site visits and inspections. (Compl. ¶¶ 20-33.)

## II. Discussion

### A. Motion to Dismiss

In ruling on a Rule 12(b)(6) motion to dismiss, the court deems the facts alleged in the complaint admitted and construes them "in the light most favorable to the plaintiff" to determine whether the pleading "alleges facts that could entitle the plaintiff to relief under some legal theory." *Dragomir v. Spring Harbor Hosp.*, 2009 ME 51, ¶ 15, 970 A.2d 310 (citation omitted). The motion shall not be granted unless it is "beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim." *Id.*

### 1. The Trust's Motion to Dismiss Arguments

The Randrick Trust ("the Trust") moves to dismiss on the grounds that the Trust granted an easement to Dubois to use the Randrick fields and therefore lacks control over composting facility and is an improper party.[2] Plaintiffs joined the Trust to access Randrick fields in an effort to determine the source of odors from the Dubois composting facility. They maintain the Trust is a necessary party under Rule 19 because without the Trust, DEP may not be able to fully inspect the composting facility and determine the odor source. *See* M.R. Civ. P. 19(a)(1) (a party is necessary to the action if "in the person's absence complete relief cannot be accorded among those already parties"). At

---

[2] The Trust's other arguments mirror several of those pressed in more detail by Dubois, and are more properly addressed in considering the Dubois motion.

3

oral argument, the Trust agreed that if DEP has authority to inspect the Dubois composting facility, then the Trust will not object to an inspection of the fields. If true, then the Trust's joinder will be unnecessary in order to afford complete relief, and the Trust may be dismissed from the case.

### 2. The Dubois Motion to Dismiss Arguments

Dubois moves to dismiss on the grounds (1) injunctive relief is not a standalone cause of action, (2) there are no violations of the DEP-issued license or applicable law that entitle plaintiffs to the injunctive relief they are seeking, (3) DEP cannot conduct an inspection without consent or an administrative search warrant, (4) the statutory authority DEP relies upon is an unconstitutional violation of their Fourth Amendment rights, (5) DEP lacks jurisdiction to regulate compost, and (6) the plaintiffs have failed to join necessary parties.

### 3. Injunctive Relief

The complaint alleges two causes of action: Count I seeks declaratory relief that the plaintiffs have the authority to access defendants' property to conduct an inspection of the composting operation; Count II essentially seeks injunctive relief restraining defendants from unlawfully interfering with the DEP's authority as declared in Count I. (Compl. ¶¶ 34-37.) Although an injunction is an available remedy under Count I, nothing prevents the State from pleading in this fashion and the court is unable to discern any practical consequence that would flow from dismissing Count II. *See* Horton & McGehee, *Maine Civil Remedies* § 5.5(f)(2) at 121 (4th ed. 2004) ("The State of Maine through the Attorney General and its departments and agencies may sue for injunctive

4

relief against violations of statute or regulation.") The motion to dismiss on this basis is denied.

### 4. DEP Licensing and Inspection Authority

DEP has authority to enter property to conduct inspections pursuant to the following statute:

> Employees and agents of the Department of Environmental Protection may enter any property at reasonable hours and enter any building with the consent of the property owner, occupant or agent, or pursuant to an administrative search warrant, in order to inspect the property or structure, including the premises of an industrial user of a publicly owned treatment works, and to take samples, inspect records relevant to any regulated activity or conduct tests as appropriate to determine compliance with any laws administered by the department or the terms and conditions of any order, regulation, license, permit, approval or decision of the commissioner or of the board.

38 M.R.S. § 347-C; 06-096 C.M.R. ch.2(5). More specific authority appears pursuant to the Waste Management Act:

> 4-A. Right of Entry. For the purposes of enforcing any provision of this Act or of developing or enforcing any rule authorized by this Act, any duly authorized representative or employee of the department may, upon presentation of appropriate credentials, at any reasonable time:
>
> A. Enter any establishment or other place which is not a residence, or any conveyance, where or in which hazardous or solid waste, sludge or septage is generated, handled or transported.
>
> B. Inspect and obtain samples of any hazardous or solid waste, sludge or septage, including samples from any conveyance in which hazardous or solid waste, sludge or septage is being or has been transported, as well as samples of any containers or labels; and
>
> C. Inspect and copy any records, reports, information or test results relating to hazardous or solid waste, sludge or septage.

38 M.R.S. § 1304(4-A)(A)-(C). The regulations adopt similar language. *See* 06-096 C.M.R. ch. 400(8)-(8)(A) ("Pursuant to 38 M.R.S.A. §§ 347-C and 1304(4-A), any duly authorized agent or employee of the Department, upon presentation of appropriate credentials, may enter any property at reasonable hours and may enter any building with the consent of the property owner, occupant or agent in order to: Inspect the property and/or inspect or obtain samples of any solid waste including samples from any conveyance in which solid waste is being or has been transported, as well as samples of any containers or labels.")

The State seeks injunctive relief allowing DEP officials to enter the Dubois property in order to inspect the composting facility and to take samples. The Dubois motion to dismiss is not rooted in the deficiency of the allegations contained within the complaint, but rather raises purely issues of law: DEP's authority as governed by the foregoing statutes and regulations.

### a.  Violation

Defendants first argue that in the absence of probable cause a violation occurred, DEP has no authority to inspect. This contention lacks merit because the unambiguous language of Section 347-C allows DEP to inspect and test samples "*as appropriate to determine compliance with any laws* administered by the department *or the terms and conditions of any* order, regulation, *license*, permit, approval or decision of the commissioner or of the board." 38 M.R.S. § 347-C (emphasis added). A known violation of the law or license is plainly not a condition precedent to the DEP's authority to inspect and to take and test samples.

### b.  Whether Entry Requires Consent or a Warrant

6

Defendants' next point has more force: they argue that even if a violation is not required, DEP must have either consent or an administrative search warrant to inspect. *See* 38 M.R.S. § 347-C. The State counters that defendants misconstrue Section 347-C; consent or administrative search warrants are required only where the DEP seeks to enter buildings. The State argues the only qualification upon the DEP's authority to enter property is that the entry must occur "at reasonable hours."

The cardinal rule of statutory construction is to effectuate the legislature's intent. *In re Spring Valley Dev.*, 300 A.2d 736, 741 (Me. 1973). The court first examines "the plain meaning of the statutory language," considering "the language in the context of the whole statutory scheme, and construe[s] the statute to avoid absurd, illogical, or inconsistent results." *Chadwick-BaRoss, Inc. v. City of Westbrook*, 2016 ME 62, ¶ 11, __ A.3d __. The court must give meaning to all the words of the statute to avoid constructions that would "render some language mere surplusage." *See Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 22, 107 A.3d 621. "In determining a statute's 'practical operation and potential consequences,' [courts] may reject any construction that is 'inimical to the public interest' or creates absurd, illogical, unreasonable, inconsistent, or anomalous results if an alternative interpretation avoids such results." Id. ¶ 21.

The analysis begins with the statutory language. Section 347-C states: "Employees and agents of the Department of Environmental Protection may enter any property at reasonable hours and enter any building with the consent of the property owner, occupant or agent, or pursuant to an administrative search warrant." 38 M.R.S. § 347-C. At first blush, the defendants' interpretation is plausible: DEP inspections must occur at a reasonable time *and* with either (1) consent or (2) an administrative warrant.

7

Yet when read more closely and examined together with 38 M.R.S. § 1304(4-A), DEP's authority to enter property without entering buildings or residences is restricted only by the requirement the entry occur at a "reasonable time." *See* 38 M.R.S. § 1304(4-A)-(4-A)(A) ("[A]ny duly authorized representative or employee of the department may, upon presentation of appropriate credentials, *at any reasonable time . . . Enter any establishment or other place which is not a residence*, or any conveyance, where or in which hazardous or solid waste, sludge or septage is generated, handled or transported.") (emphasis added); 38 M.R.S. § 347-C ("Employees and agents of the Department of Environmental Protection *may enter any property at reasonable hours* and enter any building with the consent of the property owner, occupant or agent, or pursuant to an administrative search warrant.") (emphasis added).

Under this interpretation, the "and" that appears in the language of Section 347-C—"may enter any property at reasonable hours <u>and</u> enter any building"—separates the operative restriction to enter property (a reasonable hour) from the operation restrictions for authority to enter buildings on the property (either consent or a warrant). *See* 1 M.R.S. § 71(2) ("The words 'and' and 'or' are convertible as the sense of a statute may require."); *see also Liberty Ins. Underwriters, Inc. v. Estate of Faulkner*, 2008 ME 149, ¶ 17, 957 A.2d 94. A building situated on the property is necessarily part of the property. To accept defendants' interpretation would render the language separately addressing buildings mere surplusage. *See Dickau*, 2014 ME 158, ¶ 22, 107 A.3d 621. The consent or administrative warrant requirement therefore applies only to buildings on property, not the property as a whole.

8

By statute, DEP officials have the authority to enter property to inspect and ensure compliance with the solid waste laws and rules provided they do so at a "reasonable hour." 38 M.R.S. § 1304(4-A); 38 M.R.S. § 347-C. Neither consent nor an administrative warrant is required by the statutory scheme.

### 5.   Constitutionality

Dubois premises the constitutional aspects of the motion to dismiss upon the argument that DEP lacks authority to conduct an inspection absent consent or probable cause of a violation that would support an administrative search warrant. In so far as those arguments derive from the statutes above, those contentions fail.

The constitutional issues are therefore reduced to (1) the constitutional protection afforded to the Dubois composting facility and Randrick Trust fields, if any, and (2) whether the statute, which only limits DEP's property inspection authority to a "reasonable time" violates the Fourth Amendment.

#### a.   The Constitutional Protection Afforded the Property

"One's claim of protection under the Fourth Amendment depends not upon a property right in the invaded place or article of personal property but rather upon whether the person has a legitimate expectation of privacy in the invaded place or thing." *State v. Philbrick*, 436 A.2d 844, 854 (Me. 1981). "Fourth amendment protection extends not only to the interior of a dwelling but also to the 'curtilage,' that is, to the land immediately surrounding and associated with the home." *State v. Boyington*, 1998 ME 163, ¶ 6, 714 A.2d 141. Areas outside the curtilage, described as "open fields" are

9

entitled to no Fourth Amendment protection at all. *See State v. Cayer*, 617 A.2d 208, 210 (Me. 1992).

The Law Court has enunciated the following factors to determine whether an area is constitutionally-protected curtilage, none of which are dispositive: "(1) proximity of area claimed to be curtilage to the home; (2) whether area claimed to be curtilage is included within an enclosure surrounding the home; (3) nature of the uses to which the area is put; and (4) steps taken by the resident to protect the area from observation by people passing by." *Id.* ¶ 7.

Defendants argue that the area DEP seeks to inspect is constitutionally-protected and therefore DEP's request to conduct warrantless inspections is unlawful. Defendants' arguments are not rooted in assertions about their expectations of privacy in the composting facility, but rather the perceived unconstitutionality of allowing DEP to enter the property without a warrant. (Def.'s Mot. Dismiss 8-9.) Because the area DEP seeks to inspect is largely unenclosed and situated far from a residence or an enclosed structure, the court would conclude that the area is an "open field" outside the constitutional protection afforded to curtilage. *See Dep't of Envtl. Prot. v. Emerson*, 616 A.2d 1268, 1271 (Me. 1992) (concluding unenclosed area of landfill covered with tires and debris was "open field" outside protection of the Fourth Amendment).

But in light of the fact that the Dubois composting facility is a commercial operation licensed by the state, the court is persuaded that the proper analysis should examine the nature of the commercial enterprise and the applicable regulatory framework.

### b. Regulated Commercial Properties

The U.S. Supreme Court has noted that although businesses can have an expectation of privacy in the commercial premises, such an expectation "is different from, and indeed less than, a similar expectation in an individual's home. This expectation is particularly attenuated in commercial property employed in 'closely regulated' industries." *New York v. Burger*, 482 U.S. 691, 700 (1987). "Under *Burger*, a warrantless inspection of a pervasively regulated business is permitted if: '(1) there is a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made; (2) the inspection is necessary to further the regulatory scheme; and (3) the statutory or regulatory scheme provides a constitutionally adequate substitute for a warrant.'" *State v. Melvin*, 2008 ME 118, ¶ 8, 955 A.2d 245 (citation omitted).

The first two *Burger* prongs are clearly met: the state has a substantial interest in the regulation of solid wastes to protect human health and the environment, and inspections are necessary to ensure compliance with statutes, regulations, and the conditions of a solid waste license. *See Melvin*, 2008 ME 118, ¶ 8, 955 A.2d 245. The Legislature recognized the need for regulatory authorities to have access to solid waste facilities during ordinary operations in order to ensure compliance. *See State v. McGillicuddy*, 646 A.2d 354, 355 (Me. 1994) ("[W]arrantless inspections without prior notice have long been standard in heavily regulated industries.").

Constitutionality thus turns on the third *Burger* prong. The Law Court has stated "[t]he purpose of the third prong of the *Burger* test is to ensure that any warrantless inspection program is sufficiently certain and regular so that a business subject to the program knows that its property is subject to periodic inspections undertaken for a specific purpose, subject to time, place, and manner limitations." *Id.* ¶ 9.

11

Here, Dubois could have foreseen (and in fact experienced) inspections of the composting facility. By applying for and obtaining a license with a host of laws, regulations, and conditions that apply to facilities that accept solid waste, Dubois had a lowered expectation of privacy in the commercial premises. The Legislature did not confer unfettered power and discretion upon DEP to search property inside and out. Instead, authorities may carry out lawful inspections for the purposes of enforcing the statute, regulations, and conditions of a license. The statutes and impose a "reasonable time" requirement and specifically protect areas on property with a heightened expectation of privacy, such as residences, 38 M.R.S. § 1304(4-A)-(4-A)(A), and buildings, 38 M.R.S. § 347-C. Although the statute does not limit inspection frequency, the Law Court has rejected this as grounds to invalidate an otherwise valid regulatory inspection program. *See McGillicuddy*, 646 A.2d at 355.

In sum, the Legislature curtailed the time, place, and manner of the DEP's authority to conduct inspections, balancing the state's interest in compliance against the licensee's privacy interest. The defendants have not met their burden to establish that the warrantless inspection program is unconstitutional. *See State v. Letalien*, 2009 ME 130, ¶ 15, 985 A.2d 4 (stating statutes are presumed constitutional, the burden rests upon the challenger to establish unconstitutionality, and courts must make every effort to construe a statute to avoid an unconstitutional interpretation).

### 6.    Regulatory Definitions of "Compost" and Jurisdiction

Defendants next argue that while DEP has authority over solid waste, it lacks jurisdiction over compost and therefore cannot inspect the composting facility. Defendants contend that compost is an "agricultural product" and as such, is subject to

12

the exclusive jurisdiction of the Department of Agriculture. *See* 7 M.R.S. § 152 (defining "agricultural products" to include "manure and compost").

Solid waste is defined as follows:

> "Solid waste" means useless, unwanted or discarded solid material with insufficient liquid content to be free-flowing, including, but not limited to, rubbish, garbage, refuse-derived fuel, scrap materials, junk, refuse, inert fill material and landscape refuse, but does not include hazardous waste, biomedical waste, septage or agricultural wastes. The fact that a solid waste or constituent of the waste may have value or other use or may be sold or exchanged does not exclude it from this definition.

38 M.R.S. § 1303-C(29).

If pure, finished manure and compost were indeed the only materials present at the Dubois composting facility, then this argument might warrant further consideration. The undisputed facts, however, establish that Dubois accepts solid waste that is, through a particular process, broken down into compost over time. Dubois converts that waste into compost pursuant to a license issued by the DEP. As the plaintiffs point out, whether the odors have emanated solely from materials outside the DEP's jurisdiction cannot be determined until the DEP has the opportunity to inspect the facility and possible odor sources.

### 7. Necessary Parties

Dubois lastly argues that plaintiffs have failed to join necessary parties, namely Randy Dubois, Rick Dubois, Marcel Dubois, and Sol Fedder, all of whom hold positions as officers of Dubois Livestock, Inc. The court is unable to see how their absence from the present litigation precludes effective relief. *See* M.R. Civ. P. 19. Those individuals may wish to intervene if they believe their individual interests are at risk. *See* M.R. Civ. P. 24. At this stage, however, DEP is only seeking to conduct an inspection pursuant to a

permit issued to Dubois and affecting the Trust properties. Those individuals are unnecessary to adjudicate the matter and the motion to dismiss on this ground is denied.

### 8. Motions to Dismiss: Conclusion

In light of the foregoing, the court will deny the motion to dismiss filed by Dubois. DEP has authority to inspect pursuant to the statute, which is a constitutional exercise of the State's regulatory powers. The court will dismiss the Trust conditioned upon the Trust permitted DEP to access the Randrick fields.

The court next proceeds to the plaintiffs' motion for preliminary injunction.

### B. Preliminary Injunction Standard

A party seeking a preliminary injunction "must demonstrate that (1) it will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting the injunctive relief would inflict on the other party; (3) it has a likelihood of success on the merits (at most, a probability; at least, a substantial possibility); and (4) the public interest will not be adversely affected by granting the injunction." *Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.*, 2003 ME 140, ¶ 9, 837 A.2d 129.

By statute, the Attorney General has authority to institute injunction proceedings to enjoin violations of law or any DEP "order, regulation, license, permit, approval, administrative consent agreement or decision of the board or commissioner or decree of the court." 38 M.R.S. § 348(1). Where the Attorney General has such statutory authority to further public policy and to enjoin violations, the court need neither balance the equities nor find irreparable harm to grant the injunction. *See State v. Sirois*, 478 A.2d 1117, 1121-22 (Me. 1984) (citations omitted).

14

The court concludes that granting the injunction will not adversely affect the public interest. The only consideration is thus whether the State has established a likelihood of success on the merits. Significant is the fact the plaintiffs only request an injunction to enjoin the defendants from interfering with DEP's authority to enter, inspect, collect samples, and test those samples. In opposition to the motion for preliminary injunction, Dubois raises the same arguments raised in the motion to dismiss: that injunctive relief is not an independent claim, DEP lacks authority to inspect without a suspected violation, DEP must have either consent or an administrative warrant to inspect, DEP lacks jurisdiction to regulate compost, and the plaintiffs failed to join necessary parties. These arguments fail for the reasons stated in the court's analysis to the motion to dismiss.

The plaintiffs have established a likelihood of success on the merits and thus the preliminary injunction will be granted.

## III.    Conclusion and Order

The court concludes that notwithstanding the defendants' arguments and objections, DEP has the authority to inspect, provided the inspection occurs at a "reasonable time." To date, DEP has made efforts to notify Dubois of inspections in advance. The objections raised by the defendants lack merit and will not be valid grounds to deny DEP access to the composting facility. If Dubois continues to resist DEP efforts to inspect in violation of this court's order, the plaintiffs entitled to commence contempt proceedings and seek appropriate relief. M.R. Civ. P. 66; *see also* 3 Harvey, *Maine Civil Practice*, Rule 66 Contempt Proceedings at 341 (3d ed. 2012). In the event of such a

15

proceeding, the court will entertain punitive and remedial sanctions, including, but not limited to, imposing fines and fees. *See id.*

The entry shall be:

> The motion to dismiss filed by defendant Dubois is DENIED; the defendant Trust's motion to dismiss is granted on the condition that the Trust consents to a lawful DEP inspection of the Randrick fields. The motion for preliminary injunction is GRANTED. DEP has lawful authority to inspect the composting facility and fields, provided said inspection occur at a "reasonable hour." Defendants are hereby ENJOINED from denying DEP access to the property. Any violation of this order shall be grounds for Rule 66 contempt proceedings and sanctions.

SO ORDERED.

DATE: May 11, 2016

John O'Neil, Jr.
Justice, Superior Court

16